405 So.2d 1314 (1981)
Dr. J.W. SHEFFIELD
v.
Ricky SHEFFIELD and Debra Sheffield.
No. 52709.
Supreme Court of Mississippi.
July 15, 1981.
As Modified On Denial of Rehearing November 18, 1981.
W.P. Mitchell, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, for appellant.
Nora J. Hall, Roy O. Parker, David O. Butts, Tupelo, for appellees.
Before ROBERTSON, P.J., and SUGG and BROOM, JJ.
BROOM, Justice, for the Court:
Medical malpractice is the theory of the wrongful death action of Ricky Sheffield and Debra Sheffield (plaintiffs) for the death of their newborn baby. Named as defendants were Dr. J.W. Sheffield, M.D., Itawamba County Hospital, Gena Farrar and Peggy Kent. Kent was non-suited. The jury exonerated all other defendants except Dr. Sheffield (appellant) against whom it returned a verdict for $100,000 actual and $2,500 punitive damages. Judgment was accordingly entered. Challenged by Dr. Sheffield's appeal is the trial court's action in allowing into evidence testimony concerning Dr. Sheffield's former drug abuse problem and granting and refusing certain jury instructions. We reverse.
Dr. Sheffield was engaged in 1977 to look after the plaintiff Debra Sheffield during her pregnancy and the delivery of her expected baby. Between Dr. Sheffield, Debra and her Husband Ricky was an understanding *1315 that the baby would be delivered at the Itawamba County Hospital unless some problem arose which he could not handle in which case the baby would be transferred to a Tupelo or Amory hospital. When Debra consulted Dr. Sheffield on January 12, 1978, he advised her that she was in early labor. He ruptured her placenta and had her admitted to Itawamba County Hospital where he examined her at about 3 o'clock p.m. and found delivery not to be imminent. Leaving instructions to be called if needed, he returned to his nearby office, but about 4:55 p.m. the baby was born in the labor room before he could be notified and come to the hospital. Dr. Sheffield arrived shortly afterward and found the baby to have a mild degree of distress but was physically normal. The baby was put in the nursery, and again the doctor returned to his office. At about 8:30 p.m. he returned to the hospital after being notified that the baby was in distress. At that time he administered respiratory distress medications, and the baby satisfactorily responded to the extent that the doctor left instructions to be called if needed and went home. Next morning at about 6:25 a.m., Dr. Sheffield was called to the hospital and found the baby in shock with severe distress and acidosis. The baby failed to respond to treatment and died of bronchopneumonia.
The parents' declaration against Dr. Sheffield alleged that he was negligent in failing to exercise the degree of skill and care ordinarily exercised by other physicians in the Itawamba County area and by failing properly to diagnose the baby's illness. It further alleged that he knew or should have known that the baby needed special care not available at the Itawamba County Hospital, negligently failed to have the baby transported to Tupelo or Amory for proper treatment when it experienced complications, and failed to inform the plaintiffs of the complications so that they themselves might have transported the baby to receive proper treatment.
Plaintiffs took Dr. Sheffield's deposition prior to trial thereby discovering that he had experienced a prior drug abuse problem. Dr. Sheffield then filed a motion in limine requesting the court to exclude his cross-examination in the presence of the jury as to his drug problem. The motion was overruled, and he was cross-examined in the jury's presence concerning his drug problem. Also, witnesses Spigner and Marlin were examined concerning their knowledge of the drug problem of Dr. Sheffield whose objection was overruled.
DID THE TRIAL COURT ERR IN ALLOWING CROSS EXAMINATION OF DR. SHEFFIELD CONCERNING HIS FORMER DRUG ABUSE PROBLEM AND IN ALLOWING WITNESSES SPIGNER AND MARLIN TO TESTIFY AS TO DR. SHEFFIELD'S DRUG PROBLEM? Main thrust of the declaration against Dr. Sheffield was the charge that he was negligent in failing properly to diagnose the baby's illness, in failing to have the baby moved to another hospital for treatment after complications developed, and in failing to advise the baby's parents about the complications so that they could transfer the baby for treatment. Absent from the declaration was any charge that Dr. Sheffield was under the influence of drugs at any time when he was treating the baby or that he was at any time involved in the use of drugs.
When the plaintiffs took Dr. Sheffield's pre-trial deposition, it was revealed that he had a prior history of using drugs. His response was a motion in limine to exclude questions and proof regarding his former drug abuse problem as well as actions taken by medical regulatory authorities pertaining to his drug problem, treatment, and his prescribing drugs. When this motion in limine was heard, the plaintiffs conceded that they did not plead the use of drugs although they now contend that such proof was relevant to his mental capacity, perception, memory, trustworthiness, accuracy, truthfulness, veracity and credibility as a witness. At the hearing, the trial judge reserved a ruling on whether Dr. Sheffield would be cross-examined on the drug issue and further ruled that he would not allow the plaintiffs to develop the drug *1316 abuse problem in making out their case. In voir diring the jurors, and over Dr. Sheffield's objections, the plaintiffs were allowed to question the jurors if any of them were a drug addict. When the plaintiffs were presenting their case in chief they offered Dr. Sheffield's deposition, and he objected to all questions relating to drug abuse as contained in it. The objections were sustained, but the court indicated it would permit the plaintiffs to cross-examine Dr. Sheffield pertaining to his drug abuse. Dr. Sheffield was called as an adverse witness and, over his objections, was cross-examined in detail concerning his previous drug problem. The testimony developed that about two years prior to his moving from Piedmont, Alabama, where he was practicing, to Fulton, he was using drugs. He moved to Fulton in March 1977. He had received drug treatment in Alabama about six months prior to moving to Fulton, and was taking drugs every few days when he came to Fulton. He was not taking drugs (Demerol and Leritine) when he delivered the baby and testified that he had not taken any since the fall of 1977. After the baby's death in January 1978, a fellow physician, Dr. Marlin, complained to the state board about Dr. Sheffield's past drug problem, but the death of the child was in no way connected with the drug complaint.
In their brief the parents state:
There was no direct proof of Dr. Sheffield's being under the influence of drugs at the time in question.
We think in view of the state of this particular record, it was error to allow jury presentation of testimony related to Dr. Sheffield's former drug problem. The case would be in a better posture insofar as the parents of the baby are concerned had their declaration charged that Dr. Sheffield was under the influence of drugs and that his ability was in some aspect affected during the time that the baby was delivered or cared for before or after delivery. At the hearing of the motion in limine to exclude the doctor's drug abuse problem, the parents indicated that they desired to present testimony of his drug use to go to his credibility. Now they take the position that his drug abuse was not only relevant to his credibility but also relevant to the issue of whether he was under the influence of such drugs at the time of treatment of the child as it related to the matter of judgment and exercise of the requisite degree of skill and care.
There seems to be a dearth of Mississippi case law on this precise issue, and none of the Mississippi cases cited are directly on point. Here a large part of the proof went to the matter of the doctor's drug abuse problem although the issue was not raised in the plaintiffs' declaration. The issue not having been raised in the declaration, the defendant doctor should not have been required to deal with it at trial upon the posture presented. It is one thing to charge in a declaration that a doctor is negligent in treatment accorded to those under his care, but it is vastly different to charge him with negligence and then at trial spend a large portion of the time in developing proof of drug abuse without amending the declaration. Though the facts were quite different, language taken from our decision in Terrell Investment Company v. Dunn, 253 Miss. 589, 595, 176 So.2d 291, 293 (1965) is pertinent.
The proof should conform to the allegations of the declaration, and appellee should not have been permitted to base her claim on one theory and then introduce evidence to recover a verdict based on an entirely different theory. Mississippi State Highway Comm'n. v. Jacobs, 248 Miss. 476, 160 So.2d 201, 161 So.2d 526 (1964); Mississippi State Highway Comm'n. v. Rhymes, 248 Miss. 468, 160 So.2d 197, 161 So.2d 527 (1964).
Isonhood v. State, 274 So.2d 685 (Miss. 1973) is factually distinguishable and therefore not in point here.
Appellee also cites Hundley v. St. Francis Hospital, 161 Cal. App.2d 800, 327 P.2d 131 (1958) which deals with the present subject but is not persuasive here because of factual differences. In Hundley, it was clear that the defendant doctor had used narcotics excessively for more than a year prior to *1317 the surgery as well as after surgery, and the proof showed that his ability to operate was adversely affected by his use of methadone. Uncontradicted proof in the instant case is that Dr. Sheffield had not taken drugs for a month and a half prior to the baby's birth or during care administered while it was alive. We think his previous history of drug abuse problems is too remote and disconnected with the negligence issue to be properly presented to the jury in this case, therefore, retrial must be ordered. Of course, we recognize that he may be properly impeached by any testimony that would show that he was under the influence of drugs at any time during which he did anything relating to the baby's care or at the time he was testifying.
Several sister jurisdictions, however, have had to consider the issue of the admissibility of drug abuse. As early as 1923, the Alabama Supreme Court in Standard Oil Co. v. Carter, 210 Ala. 572, 98 So. 575, 577 (1923) held that evidence of drug usage could not be introduced at trial to discredit a witness unless it was shown that he was using the drug at the time the event occurred or at the time of trial. The Court concluded:
The use of opium cannot be introduced to impair the credit of a witness unless it be shown that he was under the influence of the drug at the time of testifying or at the time of the occurrence of the event to which he is testifying, or that his mind was generally impaired by the use of said drug. State v. Gleim, 17 Mont. 17, 41 P. 998, 31 L.R.A. 294, 52 Am.St.Rep. 663; Eldridge v. State, 27 Fla. 162, 9 So. 449.
See People v. Williams, 6 N.Y.2d 18, 187 N.Y.S.2d 750, 755-6, 159 N.E.2d 549, 553-4 (1959).
More recently, other states have also adopted the position taken by the Alabama Supreme Court in Carter, supra. In State v. Dault, 19 Wash. App. 709, 578 P.2d 43, 49 (1978), the appellate court reiterated the Washington Supreme Court's holding limiting the introduction of evidence of drug use. The Court succinctly summarized as follows:
Generally, evidence of drug abuse is admissible to impeach the credibility of a witness if (1) there is a showing that the witness is using or is influenced by drugs at the time of testifying, (2) if there is a showing that the witness was using or was influenced by the drugs at the time of the occurrence which is the subject of the testimony, or (3) when a defendant puts his own character in issue. State v. Renneberg, 83 Wash.2d 735, 738, 522 P.2d 835 (1974). Annot., Use of Drugs as Affecting Competency or Credibility of Witness, 65 A.L.R.2d 705 § 5(a) and § 6 (1975); 50 Wash.L.Rev. 106 (1975).
Also see Lusher v. State, 390 N.E.2d 702, 704 (Ind. App. 1979) and 81 Am.Jur.2d, Witnesses, § 546 (1976). The general trend, therefore, has been to exclude a witness's past history of drug addiction or drug abuse unless the defendant's credibility can be impeached under one of the exceptions enumerated in Dault, supra.
For the same reasons it was error for the trial court over objection to allow witnesses Spigner and Dr. Marlin to give testimony regarding Dr. Sheffield's drug problem.
Careful study of the evidence causes us to conclude that in this case punitive damages should not be allowed. The record does not show any proper basis upon which a jury could logically conclude that the defendant was guilty of any willful or gross negligence or of such wanton or malicious misconduct as to justify exacting from him punitive damages. Recklessness or wantonness on his part in disregard for the baby cannot be concluded from the testimony although it was sufficient to establish ordinary negligence for which a jury may return a verdict against him for actual damages.
Appellant also raises the following question: SHOULD CONSIDERATION HAVE BEEN GIVEN BY THE ECONOMIST AND THE JURY TO THE LIVING EXPENSES WHICH THE BABY WOULD HAVE INCURRED HAD SHE LIVED? Our prior decisions are not entirely consistent on this proposition. Louisville & N.R. Co. v. Garnett, 129 Miss. 795, 93 So. 241 *1318 (1922) held that there should have been deducted from the present cash value of the deceased's life an amount representing "his living expenses." Our decision in Louisville stated that without the deduction made the deceased is "more valuable to his family dead than alive, and that is true." Louisville properly cites the following cases as holding that the deduction should have been made: Hines v. Green, 125 Miss. 476, 87 So. 649 (1921); New Deemer Mfg. Co. v. Alexander, 122 Miss. 859, 85 So. 104 (1920).
Other cases are cited for the appellees as more recently holding that the living expenses of the deceased are not a deductible item in arriving at damages payable in a wrongful death action. Jeffreys v. Clark, 251 Miss. 129, 168 So.2d 662 (1964); Illinois Central Railroad Co. v. Sanders, 229 Miss. 139, 90 So.2d 366 (1956).
Mississippi Code Annotated § 11-7-13 (Supp. 1980), our wrongful death statute, makes no mention of such terms as "net" or "present" cash value. The statute merely allows the jury to fix damages as it may determine "to be just" after considering all damages of every kind to the deceased plus all damages of every kind to the interested parties. We have stated that a proper element of damage is the amount that the deceased might have been entitled to as the present net value of his own life expectancy. Dickey v. Parham, 295 So.2d 284, 285 (Miss. 1974). Although logical arguments can be made on either side of this issue, we think the better view is that the living expenses of the deceased should be deducted from the present cash value of the deceased's life as set forth in Louisville & N.R. Co. v. Garnett, supra. Therefore, we overrule all cases contrary to this holding. Hereafter this will be a relevant factor in calculating damages in wrongful death cases, and the defendant will be entitled to have the jury instructed accordingly. We commend to the bench and bar instruction number 20.21 in Mississippi Model Jury Instructions (1977) which states that from the deceased's probable gross annual income there must be deducted what he/she "would have spent on [his/her] own personal living expenses." Upon request of the defendant, a jury instruction embracing the living expenses deduction principle will be granted.
Upon retrial, jury instructions should be given clearly defining negligence by referring to "acts which would constitute such" in accordance with our previous decisions. Trainer v. Gibson, 360 So.2d 1226, 1228 (Miss. 1978). Instructions given in this case, although not being totally general or abstract instructions, should in more detail relate the facts relied upon as constituting negligence.
Other assignments of error do not merit discussion.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.