PIERCE, Justice,
for the Court:
¶ 1. This case comes before the Court on appeal from the Rankin County Circuit Court, Hon. William E. Chapman presiding. Jim and Barbara Doe,[1] individually and as natural parents of Ann Doe, appeal the grant of summary judgment in favor of Jameson Inn, Inc., Kitchin Hospitality LLC, and Erica Covington (defendants). Because no genuine issue of material fact exists as to the status of Ann Doe at the time she entered upon the premises of Jameson Inn, we affirm the trial court’s grant of summary judgment.
FACTS AND PROCEEDINGS
¶2. On approximately March 1, 2003, Kelvin Washington rented a room at the Jameson Inn, located in Pearl, Mississippi. At some point, Washington turned over the keys to the room to several teenage boys so they could celebrate the birthday of one of them. The group eventually made its way to Tinseltown, a local movie theater located directly across the street *552 from the Jameson Inn. On the same evening, Ann Doe and her friend were dropped off at Tinseltown. At the time in question, Ann was thirteen years old, and her friend was twelve years old.
¶ 3. According to Ann, her friend approached a man in the game room of the theater and asked him for a smoke. The man told the girls he did not have a cigarette, but that he had “something else.” The girls then left the theater and accompanied the man to the Jameson Inn. The teenage boys also joined the group and headed back with the girls to the Jameson Inn. Ann admitted that she and her friend had left the theater to smoke marijuana at the Jameson Inn.
¶ 4. The group entered the Jameson Inn through the side door, which could be opened only with a working key. Erica Covington, the front-desk clerk, did not see the group enter the hotel.[2] While in the room, the group passed around a marijuana cigarette. But Ann stated she took only one puff and did not inhale. After smoking marijuana, Ann was raped by one of the young men in the bathroom of the hotel room. Ann’s friend also had sexual intercourse with more than one of the teenage boys.
¶ 5. Ann and her friend left the Jameson Inn and walked back to the movie theater. The girls were picked up by the grandfather of Ann’s friend. Ann did not report the incident immediately. The next day, the girls were caught stealing pregnancy tests from a nearby drugstore. The girls advised the police officer of what had taken place the night before at the Jameson Inn. Ann’s attacker pleaded guilty to statutory rape.
¶ 6. On December 22, 2003, Jim and Barbara Doe filed a complaint against Jameson Inn, Kitchin Hospitality LLC, and Erica Covington in the Hinds County Circuit Court. Venue was transferred to the Rankin County Circuit Court. On November 26, 2007, defendants filed their Motion for Summary Judgment. Because it was undisputed that Ann had been on the premises of the Jameson Inn to smoke marijuana, the trial court determined Ann Doe’s status to be that of a “licensee.”[3] The trial court further found that none of the defendants had breached any duty to Ann, and granted summary judgment in favor of Jameson Inn, Inc., Kitchin Hospitality LLC, and Erica Covington.
¶ 7. The Does now appeal and raise five issues for this Court’s review. In the interest of brevity, the issues have been consolidated into the following three issues:
I. Whether the trial court erred in considering the Does’ claims as a single cause of action for premises liability.
II. Whether the trial court erred in granting summary judgment on the basis that Ann Doe was a licensee.
III. Whether the Court should abandon the common-law distinctions be *553 tween invitees, licensees, and trespassers when determining a landowner’s duty, or, in the alternative, exempt minors from such distinctions.
DISCUSSION
¶ 8. On appeal, this Court reviews a trial court’s grant of summary judgment de novo.[4] The motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.”[5]
I. Whether the trial court erred in considering the Does’ claims as a single cause of action for premises liability.
¶ 9. The Does contend that the instant case is not only one of premises liability, but also a case of simple negligence. They cite Keith v. Peterson[6] and Pressioood v. Cook[7] for the proposition that not all causes of action that arise on one’s property are governed by the law which encompasses premises liability. Both Pressioood and Keith relied on this Court’s holding in Hoffman v. Planters Gin Co., in which the Court carved out an exception to the general standard of care owed to a licensee.[8]
¶ 10. The Hoffman exception has no place in determining whether a cause of action falls within the realm of premises liability versus that of simple negligence. Rather, the Hoffman exception is applicable only in premises liability cases where, by a finding of certain factors, the duty of care owed to a licensee should be elevated from “willful and wanton injury” to a “reasonable standard of care.”[9] Thus, whether Ann’s cause of action falls under the general theory of negligence or a specific type of negligence warrants a review of the facts that gave rise to Ann’s claim.
¶ 11. The injury of Ann, i.e., the rape, took place in a private room on the premises of the Jameson Inn. And the Does allege that Ann’s injury resulted from the dangerous condition of the Jameson Inn. Since premises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner’s premises as a result of “conditions or activities”[10] on the land, we find the trial court properly treated the Does’ claim as one of pure premises liability. As such, we cannot hold the trial court in error on this point.
II. Whether the trial court erred in granting summary judgment on the basis that Ann Doe was a licensee.
¶ 12. Ann claims she was an invitee at the time she entered the premises of the Jameson Inn and was raped. But the trial court determined Ann’s status to be that of a licensee. In order for this Court to determine whether the trial court erred in granting summary judgment in favor of the defendants, we must first address whether the issue of Ann’s status was one for the trial court or the jury.
*554 ¶ 13. This Court has held that, where the facts of the case are not largely in dispute, the classification of a plaintiff becomes a question of law for the trial judge.[11] Here, the only fact pertinent to the determination of Ann’s status is her reason for leaving Tinseltown and entering the Jameson Inn property. The dissent attempts to show that Ann’s reason for leaving Tinseltown is in dispute. But the record reveals that, while Ann’s attacker denied that he had smoked marijuana in the hotel room, he admitted that he could not remember whether anyone else had smoked marijuana. Ann, however, admitted that she had left the movie theater to smoke marijuana and, in fact, had taken one puff off a marijuana cigarette while in the hotel room.[12] Since Ann’s attacker does not confirm or contest whether Ann left the movie theater to smoke marijuana, Ann’s reason for leaving Tinseltown remains undisputed. Therefore, the determination of Ann’s status was properly a question of law to be decided by the trial judge.
¶ 14. Next, we must address the Hoffman exception. As mentioned previously, under the Hoffman exception, this Court has held that “the ordinary and reasonable standard of care has application and ‘the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either a licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known.’”[13] This exception, however, applies only to cases involving the operation or control of a business, and where injury results from “active conduct [of the landowners] as distinguished from conditions of the premises, or passive negligence.” [14]
¶ 15. Ann claims that she, her friend, and the group of boys entered the Jame-son Inn through the side entrance. But Jessica Donahue, a cleaning attendant at the Jameson Inn, claimed in her deposition that she saw “a group” enter and exit through the front door of the hotel. This disputed fact[15] calls into question whether *555 the Jameson Inn had knowledge of Ann’s presence on the night of the rape. But the Hoffman exception requires more than mere knowledge. Even if Jameson Inn knew of Ann’s presence at the hotel, the record lacks any evidence to suggest that the defendants engaged in any “active negligence” that somehow caused injury to Ann. Additionally, no evidence was presented of an “unusual danger” on the premises or an “increase in hazard” to Ann.[16] Thus, the Hoffman exception does not apply.
¶ 16. Since the Hoffman exception is inapplicable to the present facts, we must determine Ann’s status under the guidance of the common-law distinctions of trespasser, licensee, and invitee. “A licensee is one who enters upon the property of another for his [or her] own convenience, pleasure or benefit, pursuant to the license or implied permission of the owner.” [17] An invitee is a person who “goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual benefit or advantage.” [18] “[A] trespasser is one who enters upon another’s premises without license, invitation or other right.”[19]
¶ 17. According to Ann, she entered the premises of the Jameson Inn to perform the illegal activity of smoking marijuana. Thus, Ann’s status on the night in question could not be that of invitee, as the element of mutual benefit is lacking.[20] Jameson Inn received no benefit by virtue of Ann’s presence on the premises.[21] The defendants owed no higher duty to Ann other than to refrain from willfully or wantonly injuring her.[22] To constitute willful and wanton injury, something more than mere inadvertence or lack of attention is required.[23] Because the record lacks any evidence to suggest that the defendants intended willfully or wantonly to injure Ann the night she was raped at the Jame-son Inn, we cannot find that the defendants violated any duty to Ann.
¶ 18. Additionally, the Does’ argument appears to allege that the defendants were “passively negligent” rather than “actively negligent,” since they allege that the defendants “failed to take any action at all to prevent the minor girls from going to the hotel room with the older boys.” Again, passive negligence is defined as “the failure to do something that should have been done.”[24] But even assuming, arguendo, that the defendants were liable for any “passive negligence,” the duty owed to Ann would be to refrain from willfully or wantonly injuring her. And we have stated previously that the record lacks any evidence that the defendants intended willfully or wantonly to injure Ann.
¶ 19. The dissent opines that Ann could have been found by a trier of fact to have been the guest of a hotel guest, making *556 her a invitee of the Jameson Inn, and, therefore, entitled to receive a higher duty of care. It cites a case from the Florida Supreme Court to support this proposition. But the case is easily distinguishable from the present facts, and adds no instructional value to this Court’s analysis.
¶ 20. In Steinberg v. Irwin Operating Co., the Florida Supreme Court held that the injured party “enjoyed the status of an implied invitee when she entered the hotel lobby,” because she was a friend of a registered hotel guest.[25] But Ann would not qualify as a “guest of a registered hotel guest,” because the room in which she visited was not registered to her attacker. Rather, it was rented by and registered to Kelvin Washington. Thus, Kelvin Washington was the only registered hotel guest. If anything, Ann was the guest of a guest of a registered hotel guest. And even with this status, we find that Ann was, at most, a licensee at the time she entered the Jameson Inn. Thus, the trial court did not err in granting summary judgment in favor' of the defendants.
III. Whether the Court should abandon the common-law distinctions between invitees, licensees, and trespassers when determining a landowner’s duty.
¶ 21. On appeal, the Does request that this Court abandon the common-law distinctions of trespasser, licensee, and invitee, and opt for a reasonable-care standard. Alternatively, the Does argue that, if the Court should retain the common-law distinctions, it should exempt minors from such classifications.
¶22. As recently as 2003, this Court has declined to abandon the common-law distinctions at issue today.[26] The Court thoroughly has addressed this very argument, and has noted that, over time, courts have “balanced the interests of persons injured by conditions of land against the interests of possessors of land to enjoy and employ their land for the purposes they wish.”[27] And to abandon “the careful work of generations for an amorphous ‘reasonable care under the circumstances’ standard seems ... improvident.”[28] Further, the Court has held that “the system of invitee, licensee, and trespasser, evolved to delineate very fine distinctions as to when a duty was owed to an entrant on land,” and that these distinctions protect a landowner from the “unfettered discretion of the juries.”[29] Because we find the foregoing reasons persuasive, and we agree that the need to promote stability and predictability in the law outweighs the justifications for abandoning the common-law distinctions, we decline to abandon the trespasser, licensee, and invitee distinctions.
¶ 23. Lastly, we will address the Does’ alternative argument of whether a minor should be exempt from the common-law classifications of trespasser, licensee, and invitee. In Mississippi, the question of a minor’s capacity to perceive danger has arisen in the context of contributory negligence and the doctrine of attractive nuisance. Contributory negligence is the “act or omission amounting to want of ordinary care on part of the complaining party which, concurring with the defendant’s negligence, is the proximate cause of injury.”[30] Within this doctrine, *557 there is a presumption that a minor between the ages of seven and fourteen does not possess sufficient discretion to make him or her guilty of contributory negligence.[31] The doctrine of attractive nuisance is “the rule that a person who owns property on which there is a dangerous thing or condition that will foreseeably lure children to trespass has a duty to protect those children from the danger.”[32]
¶ 24. This Court has held that the attractive-nuisance doctrine does not apply to “obvious, natural dangers,” and that an “occupant may assume that a child’s guardians will have warned the child about readily apparent dangers.”[33] And within the realm of contributory negligence, the presumption that a minor cannot exercise judgment with regard to a dangerous condition on the land may be rebutted by showing the minor was capable of exercising judgment and discretion, i.e., exceptional capacity.[34] Likewise, the doctrine of premises liability does not exempt a minor from the common-law classifications, where it can be shown the minor was capable of recognizing an obvious and open danger.[35]
¶25. Here, the Does would like this Court to consider the notion that Ann was not capable of understanding the consequences of entering a private hotel room with strange men she did not know and without an adult. Yet the facts uncontro-vertedly show that Ann understood the potential danger of going to the hotel room with strangers. In fact, Ann admitted in her deposition that she was aware of the potential danger, but went to the hotel anyway. Since Ann admittedly recognized the potential consequences of her actions, and the defendants owed only a duty to refrain from willful and wanton injury to Ann, the Does’ argument on this point must fail.
CONCLUSION
¶ 26. Based on the foregoing reasons, the trial court’s grant of summary judgment is affirmed.
¶ 27. AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. DICKINSON, J., NOT PARTICIPATING.

. On appeal, the names of the appellants have been changed to protect the minor's identity.

. Additionally, two other employees of Jame-son Inn claim they saw two white girls together with several African-American boys leave the hotel. But neither employee could provide further details of the group other than race. Specifically, one of those employees claimed she saw "a group” get off of the elevator in the front lobby and exit through the front door. The other employee claimed she saw "a group” talking and laughing outside the door to the side entrance of the hotel. Ann claims the group she was with entered through the side door of the Jameson Inn, and that she and her friend exited the Jame-son Inn alone.

. As a licensee, the defendants owed Ann Doe a "duty to refrain from willfully or wantonly injuring” her. Little v. Bell, 719 So.2d 757, 760 (Miss.1998).

. Duckworth v. Warren, 10 So.3d 433, 436 (Miss.2009) (citing One South, Inc. v. Hollowell, 963 So.2d 1156, 1160 (Miss.2007)).

. Miss. R. Civ. P. 56(c).

. Keith v. Peterson, 922 So.2d 4, 10 (Miss.Ct.App.2005).

. Presswood v. Cook, 658 So.2d 859, 861-62 (Miss. 1995).

. See Hoffman v. Planters Gin Co., 358 So.2d 1008, 1013 (1978).

. See Little v. Bell, 719 So.2d 757, 761 (Miss.1998); Hughes v. Star Homes, Inc., 379 So.2d 301, 304 (Miss.1980); Hoffman v. Planters Gin Co., 358 So.2d 1008, 1011-12 (Miss.1978).

. Black’s Law Dictionary 961 (7th ed. 2000).

. Leffler v. Sharp, 891 So.2d 152, 156 (Miss.2004) (citing Adams v. Fred’s Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss.1986); Little v. Bell, 719 So.2d 757, 761 (Miss.1998); Graves v. Massey, 227 Miss. 848, 87 So.2d 270, 271 (1956)).

. The following exchange concerns Ann’s written statement to the police:
Q. "Then we asked if he had a cig to smoke and he was like, no, but I have some weed.” Is that true?
A. Yes, sir.
Q. "And [Rachel Roe] was like really, well, come on let's go smoke it and I thought for a second and like, okay, whatever.” Is that true?
A. Yes, sir.
And again in the following colloquy:
Q. Did you call your parents or anyone to tell them that this man had invited you over to a hotel room to smoke marijuana?
A. No, sir.
Q. Why not?
A. I didn’t want anybody to know.
Q. Why not? Didn’t want them to know you were smoking marijuana or didn’t want them to know you were going to a room with a guy that you didn’t know?
A. I didn't want them to know I was going [with Rachel Roe] to a room with people I didn't know.
Q. To smoke marijuana?
A. Yes, sir.
[[Image here]]
Q. So how many puffs did you take off this marijuana cigarillo?
A. Just one.

. Little, 719 So.2d at 761 (quoting Hoffman, 358 So.2d at 1013) (emphasis added).

. Id. at 761.

. Again, Jessica Donahue claimed she saw "a group” get off of the elevator in the front lobby and exit through the front door. The other employee claims she saw "a group” *555 talking and laughing outside the door to the side entrance of the hotel. Ann claims the group she was with entered through the side door of the Jameson Inn, and that she and her friend exited the Jameson Inn alone.

. See Hoffman, 358 So.2d at 1013.

. Lucas v. Miss. Housing Authority # 8, 441 So.2d 101, 103 (Miss.1983).

. Hughes v. Star Homes, Inc., 379 So.2d 301, 303 (Miss. 1980).

. Hoffman, 358 So.2d at 1011.

. Little, 719 So.2d at 761.

. Id.

. Id.

. Id.

. Titus v. Williams, 844 So.2d 459, 466 (Miss.2003).

. Steinberg v. Irwin Operating Co., 90 So.2d 460, 461 (Fla. 1956).

. See Titus, 844 So.2d 459 (Miss.2003).

. Little, 719 So.2d at 763.

. Id. at 763.

. Id. at 764.

. Black's Law Dictionaiy 716 (6th ed. 1991).

. Glorioso v. YMCA, 556 So.2d 293, 295 (Miss.1989).

. Black's Law Dictionary (8th ed. 2004).

. Skelton v. Twin County Rural Electric Ass’n, 611 So.2d 931, 937 (Miss.1992) (citing McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892, 898 (1965)). .

. Skelton, 611 So.2d at 937.

. See id. at 938.