# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01558-SCT

*JIM DOE AND BARBARA DOE, INDIVIDUALLY
AND AS NATURAL PARENTS OF ANN DOE, A
MINOR, AND AS ADMINISTRATOR OF THE
ESTATE OF BARBARA DOE, DECEASED, AND
ANN DOE*

*v.*

*RANKIN MEDICAL CENTER AND LARRY
SWALES, AS ADMINISTRATOR OF THE ESTATE
OF GINA McBETH, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | WAYNE E. FERRELL, JR. |
| | JANICE T. JACKSON |
| | MARK P. CARAWAY |
| | STEPHEN P. KRUGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WAYNE E. FERRELL, JR. |
| | JANICE T. JACKSON |
| ATTORNEYS FOR APPELLEES: | MARK P. CARAWAY |
| | STEPHEN P. KRUGER |
| | T. L. "SMITH" BOYKIN, III |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/10/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.

### WALLER, CHIEF JUSTICE, FOR THE COURT:

¶1. Ann Doe was treated at Rankin Medical Center ("Rankin Medical") after she was

sexually assaulted. Doe claimed that when she returned to school, fellow students teased her

about the sexual assault. According to Doe, unidentified classmates said they had heard about the incident from a classmate, who was the daughter of Gina McBeth, a nurse who worked in the emergency room at Rankin Medical. Doe sued McBeth and Rankin Medical, alleging breach of confidentiality and damages. The trial court granted summary judgment in McBeth's and Rankin Medical's favor.

¶2.     Doe appeals, arguing that circumstantial evidence and McBeth's credibility created a genuine issue of material fact. She also argues first on appeal that the trial-court judge should have recused himself, since he was the prosecutor in the underlying rape case. Since Doe did not present any admissible evidence to create a genuine issue of material fact under any actionable theory of recovery and failed to file a motion for recusal, we affirm the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶3.     This case ensues from the alleged disclosure by a Rankin Medical nurse of the sexual assault of a minor. The facts of the sexual assault are fully discussed in our opinion of ***Doe v. Jameson Inn, Inc.***, 56 So. 3d 549 (Miss. 2011). On Saturday night, March 1, 2003, Ann Doe[1] and her friend H.F. (hereafter referred to as "Doe's friend" or "her "friend") were dropped off at a movie theater in Pearl, Mississippi. ***Id.*** at 552. Doe was thirteen, and her friend was twelve. ***Id.*** The girls left the theater with an adult male to smoke marijuana with a group of teenage boys at a nearby inn. ***Id.*** Doe did not know the man or the group of boys

---

[1] The alleged victim will be referred to by the fictitious name of "Doe" to protect the confidentiality of the minor. "Jim Doe and Barbara Doe, individually and as natural parents of Ann Doe, a minor, and as administrator of the estate of Barbara Doe, deceased, and Ann Doe" will be encompassed in the use of "Doe" unless specifically stated to the contrary.

before that night. One of the teenagers sexually assaulted Doe in the hotel room bathroom. *Id.* The two girls then left the hotel and walked back to the theater. *Id.*

¶4.    The next day, Doe and her friend were caught stealing pregnancy tests from a drugstore. *Id.* The girls told the police what had happened the previous night, and the police contacted their parents. *Id.* Doe's family took her to Rankin Medical for treatment that Sunday, where nurses administered a rape kit. Gina McBeth, a registered nurse employed by Rankin Medical, was on duty at the time of Doe's treatment.

¶5.    On Monday, Doe's family took her to the police station to report the assault. The family remained at the station all day, and Doe also stayed home from school on Tuesday. She returned to school on Wednesday. According to Doe, "more than ten" classmates approached her about the sexual assault. But Doe did not recall any of these students' names. Doe stated that some of the unknown students told her that McBeth's daughter, a classmate of Doe, had told them about the incident. Doe claimed that McBeth's daughter had received this information from her mother, McBeth, who Doe claims recognized her in the Rankin Medical emergency department.

¶6.    Doe filed suit in the Circuit Court of Rankin County in January 2004 for damages she claimed she sustained from the alleged disclosure by McBeth. Doe claimed that McBeth breached her duty of confidentiality and that the disclosure of this information to other classmates and the community caused her traumatic emotional distress. McBeth denied these allegations in her sworn deposition testimony. McBeth testified that: she was involved with the medical treatment of Doe's friend but not Doe; she did not know or recognize Doe; she

3

did not know why Doe was receiving treatment at Rankin Medical that night; she did not tell her daughter about Doe's treatment at Rankin Medical; and she found out from her daughter, who had heard from classmates at school about Doe's sexual assault. McBeth died during the pendency of those proceedings, and her estate was timely substituted as a party.

¶7.     McBeth and Rankin Medical filed motions for summary judgment in July 2014. Doe did not produce any witnesses or documentary evidence to substantiate her claim that McBeth was the source of rumors at the school or that McBeth even knew Doe. The trial court judge–who also had served as the prosecuting attorney for the underlying sexual assault case nearly a decade earlier–granted the motions and dismissed the case. He found "that there [was] insufficient evidence to create a jury issue on the question of whether . . . McBeth . . . breached the confidentiality owed to . . . Doe." Doe raises two issues on appeal: (1) whether the circuit court erred in granting McBeth's and Rankin Medical's motions for summary judgment, and (2) whether the circuit-court judge should have recused himself, since he was the prosecuting attorney for the underlying rape case.

**ANALYSIS**

**I.      Whether the circuit court erred in granting McBeth's and Rankin Medical's motions for summary judgment.**

¶8.     Doe argues that she provided sufficient facts and circumstantial evidence of negligence and violation of confidentiality laws, so the circuit court erred in granting McBeth's and Rankin Medical's motions for summary judgment. Doe argues the circuit court should not have substituted its decision on disputed issues that should have been decided by a jury. Doe also argues the circuit court erred in considering only direct evidence, and that

4

the court failed to consider circumstantial evidence as well as the inference of negligence. Finally, Doe claims the circuit court failed to consider the issue of McBeth's lack of credibility.

### A. Standard of Review

¶9. This Court reviews a trial court's dismissal of an action on summary judgment *de novo*. **Trustmark Nat'l Bank v. Meador**, 81 So. 3d 1112, 1116 (Miss. 2012). Rule 56(c) of the Mississippi Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). To decide if a genuine issue of material fact exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." **Sierra Club, Inc. v. Sandy Creek Energy Assoc.**, 627 F.3d 134, 138 (5th Cir. 2010).

¶10. The "adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial." **Corey v. Skelton**, 834 So. 2d 681, 684 (Miss. 2003) (quoting **Miller v. Meeks**, 762 So. 2d 302, 304 (Miss. 2000)). The party opposing summary judgment may not defeat the motion merely by responding with general allegations, but must set forth in an affidavit or otherwise specific facts showing that issues exist which necessitate a trial. **Drummond v. Buckley**, 627 So. 2d 264, 267 (Miss. 1993). The nonmovant's "claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could

return a favorable verdict." ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1213-14 (Miss. 1996).

¶11. "In other words . . . the non-moving party 'must rebut by producing significant probative evidence . . . ." ***Id.*** (quoting ***Foster v. Noel***, 715 So. 2d 174, 180 (Miss. 1998)). Summary judgment is required if the respondent fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Wilbourn***, 687 So. 2d at 1214 (quoting ***Galloway v. Travelers Ins. Co.***, 515 So. 2d 678, 683 (Miss. 1987)). When a party who opposes summary judgment will bear the burden of proof at trial and "fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." ***Id.***

### B. Whether the circumstantial evidence in this case proves negligence on the part of McBeth and Rankin Medical.

¶12. While the trial court held there was insufficient evidence in this case, Doe argues a review of the circumstantial evidence clearly shows that she can defeat a motion for summary judgment. Doe argues the trial court reached its decision considering only the lack of direct evidence in support of Doe's claim. Doe claims this is error because the court is required to consider all evidence, including circumstantial evidence, in favor of the nonmoving party.

¶13. We agree with Doe that "negligence may be proven by circumstantial evidence . . . ." ***K-Mart Corp. v. Hardy***, 735 So. 2d 975, 981 (Miss. 1999); *see also* ***Thomas v. The Great Atlantic and Pacific Tea Co., Inc.***, 233 F.3d 326, 329-30 (5th Cir. 2000). But the circumstances must be "sufficient to take the case 'out of the realm of conjecture and place

6

it within the field of legitimate inference.'" *Id.* "[Circumstantial evidence] is evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred . . . . Verdicts may rest upon reasonable probabilities." *Mississippi Winn-Dixie v. Hughes*, 156 So. 2d 734, 736 (Miss. 1963).

### 1. The Potential Sources of Breached Information

¶14. Doe argues there are many reasons for the deduction that the disclosure of the rape could not have come from anyone other than McBeth. Doe first focuses on the group of teenage boys who committed the sexual assault. According to Doe, the boys did not attend the same school as she did, and they were not part of the same social groups as Doe or her friend. Doe claims it is thus unlikely and highly speculative that the disclosure of the rape would have come from this group, since it would implicate them in a crime.

¶15. Doe also argues that neither she nor her friend could have disclosed the information. Because rape victims tend to feel confused, ashamed, and helpless, it is common for many victims to remain silent and not report the assault to authorities.[2] Doe also claims that during that short time frame, her family never had a chance to disclose this information. It is obvious, Doe argues, that McBeth disclosed her confidential medical information and breached the standard of care.

---

[2] Doe cites a study from the Office of Juvenile Justice and Delinquency Prevention that found only ten percent of victims report to the police and only two and a half percent report to medical personnel. *See* U.S. Dep't of Justice, *Child and Youth Victimization Known to Police, School and Medical Authorities* 1 (2012), http://www.ojjdp.gov/pubs/235394.pdf, (last visited Mar. 8, 2016).

¶16. Doe relies chiefly on two cases concerning circumstantial-evidence and negligence claims. One case is *Anderson v. Walmart*, No. 2013 U.S. Dist. LEXIS 48239, at *2 (S.D. Miss. Apr. 3, 2013), in which the plaintiff claimed that she slipped and fell over a piece of metal on Walmart's floor. The plaintiff alleged that the employees placed the piece of metal on the floor while they were working on the store's shelves. *Id.* at *7. The plaintiff offered no direct evidence of how the metal piece got on the floor, and Walmart denied any role. *Id.* Walmart filed a motion for summary judgment. *Id.* at *2. Plaintiff opposed the motion and stated that although she could not prove with certainty how the metal piece got on the floor, there was sufficient circumstantial evidence that it was likely part of the shelving that the Walmart employees were handling on the day of the accident. *Id.* at *7. The trial court found there was sufficient circumstantial evidence in the record to create a jury issue and denied Walmart's motion for summary judgment. *Id.* at *23.

¶17. Doe also relies on *Elston v. Circus Circus Mississippi, Inc.*, 908 So. 2d 771 (Miss. Ct. App. 2005). The plaintiff in *Elston* slipped in a puddle of water in the lobby of a casino. *Id.* at 772. The casino filed a motion for summary judgment, arguing the plaintiff could not show sufficient evidence regarding how the water got on the floor. *Id.* Plaintiff opposed the summary-judgment motion by showing that the water was near the potted plants and that the plaintiff fell on a day the plants were usually watered. *Id.* The plaintiff did not offer any direct proof that the plants were watered on that exact day. *Id.* Based on the circumstantial evidence, the trial court's order granting the casino's motion for summary judgment was reversed and the case was remanded for trial. *Id.* at 776.

¶18. We note that there are distinctions between *Elston*, *Anderson*, and this case. First, the *Elston* and *Anderson* plaintiffs were injured by a tangible and identifiable danger (the puddle or piece of metal shelving), which were capable of a definite description (substance, appearance, location, etc.). Here, Doe claims injury from a "nebulous and evolving danger"–the rumors allegedly repeated by unidentified students. Second, in *Elston* and *Anderson*, the casino and Walmart were unable to identify any source for the puddle or metal piece. In this case, McBeth and Rankin Medical argue that several other individuals are equally as likely as McBeth to have participated–intentionally or unintentionally–in the spread of the rumors. Such individuals include Doe, her parents, her siblings, her friend, the alleged assailants, law enforcement officials, or unknown witnesses at the movie theater.

¶19. As to the alleged assailants, they knew Doe's identity and even called her cell phone during the relevant time frame. While the assailants did not attend Doe's school, Doe did not cite any evidence indicating that the boys did not know Doe's other classmates. McBeth and Rankin Medical argue that it is equally likely that these boys (directly or indirectly) spread the rumors as it is that they did not. Doe never deposed them, so one can only speculate whether this was true.

¶20. McBeth and Rankin Medical also note that Doe's friend, who was treated by McBeth at Rankin Medical, cannot be excluded as a possible source of the rumors. Doe's friend was an eyewitness to the sexual assault and to Doe's treatment at Rankin Medical. Doe never deposed her friend, nor did she obtain an affidavit. Doe testified she did not remember talking to her friend about the rumors, and she stated that she didn't remember whether the

9

two still went to school together at the time of these events. Doe failed to cite any evidence or testimony which excludes her friend as a source for the rumors at the school. Additionally, as McBeth and Rankin Medical argue, the Does spent the entire day waiting and giving statements at the police station. Doe did not present any testimony or affidavits from police officers or other individuals who may have–directly or indirectly–been the source of the information.

¶21.   This Court finds that Doe's failure to obtain testimony or affidavits from any of these possible sources to counter McBeth's and Rankin Medical's motion for summary judgment means that Doe has not taken "the case out of the realm of conjecture and place[d] it within the field of a legitimate inference of liability." *Patterson v. T.L. Wallace Constr., Inc.*, 133 So. 3d 325, 332 (Miss. 2013) (quoting *Huynh v. Phillips*, 95 So. 3d 1259, 1263 (Miss. 2012)).

### 2.   *Whether Doe's testimony creates a genuine issue of material fact.*

¶22.   Not only did Doe fail to provide any affidavits or other testimony to counter the motions for summary judgment, Doe's testimony of the statements made by her unidentified classmates is hearsay and not admissible evidence to prove a breach of confidentiality. McBeth denied disclosing Doe's medical treatment at Rankin Medical to her daughter. The only testimony to the contrary is Doe's. Doe testified that "more than ten" unidentified classmates approached her, stating they knew she had been raped and that McBeth's daughter had told them. Doe did not remember the names of the students who approached her at

10

school.[3] Nor did Doe confront McBeth's daughter. Doe had no personal knowledge or any other admissible evidence that McBeth had disclosed her confidential medical information to anyone.

¶23.    Doe's statements of what other students allegedly told her is hearsay under Rule 801(c) of the Mississippi Rules of Evidence, which is inadmissable at trial and not appropriate evidence in opposition to McBeth's and Rankin Medical's motions for summary judgment. Doe cannot repeat the purported statements of unidentified students/declarants in order to prove that McBeth's daughter communicated the rumors to them. *See Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 91 (Miss. 2013) (affidavit testimony about what an incident report documented about notice provided to a defendant before a slip-and-fall incident was hearsay, which is not sufficient to defeat summary judgment). While Doe may believe that McBeth's breach of confidentiality led to rumors at school about her sexual assault, these are unverified alleged hearsay statements by unknown classmates, and they do not create a genuine issue of material fact. *See Meador*, 81 So. 3d at 1117 (excluding portions of affidavits given in opposition to a motion for summary judgment, which were not based on personal knowledge).

¶24.    We find that Doe cannot overcome her lack of direct evidence of McBeth's supposed role in the rumors through speculation and conjecture, which she attempts to pass off as circumstantial evidence. The testimony offered by Doe is inadmissible hearsay. Thus, this issue is without merit.

---

[3] Doe testified to the identity of another classmate named Candace Tillman, who told her about the rumors. But Doe did not depose her or provide a supporting affidavit from her.

### C. Whether McBeth's credibility as a witness creates a genuine issue of material fact.

#### 1. McBeth's Prior Drug Use

¶25. The exact date is not clear from the record, but McBeth died sometime before March 7, 2011, when the suggestion of death was filed with the circuit court. Her cause of death is not given. When McBeth was alive, she testified by deposition that she did not tell her daughter about Doe's treatment for rape at Rankin Medical. Doe argues that McBeth's testimony must be completely disregarded, because McBeth was not a credible witness. Doe argues that, since McBeth had a history of drug abuse, of falsifying records to get drugs from hospital patients, and of stealing drugs from the hospitals that employed her, this seriously calls into question the veracity of any statement she made under oath in her deposition.

¶26. McBeth admitted she was fired from her nursing position at St. Dominic's Hospital, a previous employer, for suspicion of drug abuse and theft. Rankin Medical also fired McBeth for drug abuse, drug theft, and falsifying medical records. McBeth admitted abusing Demerol and other opiates during the time frame in question. Doe notes that the side effects of those drugs seriously affect the mind and functionality of the abuser, and that McBeth admitted that the drug abuse affected her memory. Because of this, Doe argues the trial court should have disregarded McBeth's and Rankin Medical's attempts to rely on her statement that she did not disclose the information.

¶27. The circumstances of McBeth's termination and drug use would be inadmissible at trial under *Sheffield v. Sheffield*, 405 So. 2d 1314 (Miss. 1981). *Sheffield* involved a medical negligence/wrongful death action. *Id.* Plaintiffs introduced at trial, over objection, testimony

12

about the defendant physician's drug use. *Id.* at 1315. No proof was introduced that the defendant was using drugs at any time or was impaired at the time of the treatment at issue. *Id.* at 1316. In ordering reversal, the Court noted that the "testimony that would show that the [the defendant] was under the influence of drugs at any time during which he did anything relating to the baby's care or at the time he was testifying" would be relevant. *Id.* at 1317.

¶28.    As in *Sheffield*, Doe has not shown that McBeth was in any way impaired at the time of her deposition testimony or on March 3, 2003, when Doe's friend was in McBeth's care. Not only is evidence regarding McBeth's employment termination and prior drug use inadmissible as evidence at trial, it also is insufficient to rebut the motion for summary judgment. *See Walker v. Skiwski*, 529 So. 2d 184, 186-87 (Miss. 1988). No attacks on McBeth's credibility can substitute for Doe's failure to meet the defendants' motion for summary judgment with admissible evidence to support claims of an improper disclosure of confidential information. We find this issue is without merit.

### 2.    McBeth's Statement About Another Classmate

¶29.    Rankin Medical also investigated McBeth for her role in disclosing Doe's sexual assault. McBeth defended herself by stating to Christopher Powe, Rankin Medical's Director of Emergency Services, who conducted the internal investigation, that another one of her daughter's classmates had disclosed the information to other schoolmates. Doe claims this disclosure from the other classmate is impossible because this other classmate was in the hospital at Rankin Medical the week *before* Doe was there. This student, according to Doe,

13

could not have reported the rape one week before it occurred. Doe states this is another example of McBeth's blurred memory from drug abuse and lack of trustworthiness and credibility.

¶30. McBeth and Rankin Medical respond that Doe's claim to have excluded this classmate is a red herring based on a misreading of McBeth's and Powe's testimony. In her deposition, McBeth testified that her daughter, Alana, reported another student (Phillips) as the source of Alana's information–not the initial source of the rumors around the school. Powe testified about the contents of a report in which he paraphrased McBeth's reference to an unidentified "best friend" who recently had been to Rankin Medical and "knew the details of that case from a network or friends at school." McBeth claims there was no implication that this "mystery friend" was the source of the rumors at school and that Doe failed to explore possible explanations for this comment in the investigator's report. We agree and find this issue is without merit.

### D. Whether Doe has proven an actionable disclosure by McBeth or Rankin Medical under any theory of recovery.

¶31. Doe claims that McBeth breached: (1) the federal Health Insurance Portability and Accountability Act ("HIPPA") laws, *see* 42 U.S.C. § 1320d-5(d)(1) (2012); (2) the nurse/patient communications privilege, *see* Miss. Code. Ann § 13-1-21 (Rev. 2012); (3) the Mississippi Nursing Practice Law, *see* Miss. Code Ann. § 73-15-29 (Rev. 2012); and/or (4) the Mississippi Board of Nursing Regulations, *see* Miss. Admin. Code 30-18-2830:1.2(B)(2) and (B)(3) (Rev. 2012).

14

¶32. We first note that HIPPA does not create a private cause of action for disclosures of confidential information. *Acara v. Banks*, 470 F. 3d 569, 571-72 (5th Cir. 2006). Only Mississippi's Attorney General may bring claims on behalf of Mississippi residents for alleged HIPPA violations. *See* 42 U.S.C. § 1320d-5(d)(1). Even under a liberal construction of the pleadings, Doe has presented no proof that she exhausted these administrative remedies.

¶33. We also find that a private cause of action is not granted for an alleged improper disclosure of confidential information under the Mississippi Nursing Practice Law. *See* Miss. Code Ann. § 73-15-29; *Tunica County v. Gray*, 13 So. 3d 826, 830 (Miss. 2009) (finding that, based on the language of the statute and relevant legislative history, the statute that provided a procedure for disposing of unclaimed corpses did not create a private right of action). We believe this also is true for the Board of Nursing Regulations. Miss. Admin. Code 30-18-2830:1.2(B)(2) and (B)(3). Only Section 13-1-21 of the Mississippi Code creates civil liability for improper disclosures of medical information, but this is only for "willful or reckless and wanton" disclosures. *See* Miss. Code Ann. § 13-1-21.

¶34. The physician-patient and/or healthcare provider-patient privilege did not exist at common law. *Franklin Collection Serv., Inc., v. Kyle*, 955 So. 2d 284, 288 (Miss. 2007). Thus, "the medical privilege exists in Mississippi only to the extent of the narrow privilege created by Section 13-1-21 of the Mississippi Code, and the broader privilege created by Rule 503 of the Mississippi Rules of Evidence." *Id.* Under Mississippi law, all communications made to a nurse are privileged. Miss. Code Ann. § 13-1-21. Nurses are

"civilly liable for damages for any *willful* or *reckless* and *wanton* acts or omissions constituting such violations." Miss. Code Ann. § 13-1-21(3) (emphasis added). Since Doe cannot prove the disclosure of her confidential information by McBeth, she certainly cannot establish a disclosure made with willful, reckless, or wanton intent.

¶35.    We cannot find anywhere in Section 13-1-21 of the Mississippi Code, Mississippi Rule of Evidence 803, or Mississississippi jurisprudence a cause of action for a *negligent* breach of patient confidentiality. Thus, we conclude that Doe's reliance on cases discussing proving negligence and proximate cause in negligence cases by circumstantial evidence is without merit.

¶36.    In conclusion, we find Doe presented no significant probative evidence in response to McBeth's and Rankin Medical's motions for summary judgment to create a genuine issue for trial. She offered no affidavits or sworn deposition testimony from other classmates or other potential sources of the information. Additionally, the testimony of what the unidentified students told her is inadmissable hearsay. Issues of McBeth's credibility, including her prior drug use, are insufficient summary-judgment evidence. Finally, Doe's claims do not fall under any actionable legal theory. Thus, we find  that the circuit court judge did not err in granting McBeth's and Rankin Medical's motions for summary judgment.

**II.    Whether the circuit court judge should have recused himself since he was the prosecuting attorney for the underlying rape case**.

¶37.    Circuit Court John H. Emfinger presided over Doe's trial after the former judge retired in 2010. Before assuming the bench as the Rankin County Circuit Court judge, he served as

16

Assistant District Attorney in the Twentieth Circuit Court District. Doe listed Judge Emfinger as a potential witness because he was the prosecutor at sentencing of the teenaged boys who committed the underlying sexual assault. For the first time on appeal, Doe asserts that Judge Emfinger committed reversible error by not recusing himself. We find that Doe's argument for recusal fails for two reasons.

¶38.   First, Rule 1.15 of the Uniform Rules of Circuit and County Court Practice requires that a motion for the recusal of a judge be filed "within 30 days following notification to the parties of the name of the judge assigned to the case; or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." URCCC 1.15. Doe never filed a motion seeking Judge Emfinger's recusal and even agreed on two occasions to allow the case to be set before him. "The failure to seek recusal generally is considered implied consent to have the judge go forward in presiding over the case." *Rice v. State*, 134 So. 3d 292, 299 (Miss. 2014). This Court "will not allow a party to take his chances with a judge about whom he knows of grounds for recusal and then, after he loses, file his motion." *Tubwell v. Grant*, 760 So. 2d 687, 689 (Miss. 2000).

¶39.   Doe states that, during a telephone conference with all parties and Judge Emfinger, her counsel advised the judge that he might be called as a witness and asked whether this presented a conflict of interest which would warrant recusal. That, in and of itself, Doe argues, was an *ore tenus* motion for recusal. Doe claims that Judge Emfinger noted that he was listed as a witness and stated that his involvement in the underlying prosecution of the

17

sexual assault would not interfere with his partiality and ability as a judge at the trial of this case. We note that we could not find any evidence of this exchange in the record.

¶40. Even if we were to hold that Doe's announcement that the judge might be a witness was effectively an *ore tenus* motion for recusal that satisfies Rule 1.15, Doe's argument fails for a second reason. Rule 1.15 of the Uniform Rules of Circuit and County Court Practice states that "[t]he denial of a motion to recuse is subject to review by the Supreme Court on motion of the party filing the motion as provided in M.R.A.P. 48B." URCCC 1.15. "[I]f within 30 days following the filing of the motion for recusal the judge has not ruled, the filing party may within 14 days following the judge's ruling, or 14 days following the expiration of the 30 days allowed for ruling, seek review of the judge's action by the Supreme Court." Miss. R. App. P. 48B. The record does not show that Doe sought review from this Court within fourteen days of the date when she argues Judge Emfinger should have ruled on her *ore tenus* motion.

¶41. Doe failed to file a motion for recusal under Rule 1.15 of the Uniform Rules of Circuit and County Court Practice within thirty days. She also did not seek a review from this Court within fourteen days after the date when she argues Judge Emfinger should have ruled on her *ore tenus* motion. Thus, we find this issue is without merit.

**CONCLUSION**

¶42. Doe did not offer any affidavits or sworn deposition testimony from other classmates or from other potential sources of the information. Hearsay and issues of McBeth's credibility are not significant probative evidence to create a fact issue for trial in response to

18

McBeth's and Rankin Medical's motions for summary judgment. Doe's claims also do not fall under any actionable legal theory. Finally, Doe failed to file a motion for recusal or to appeal a denial of a motion for recusal. Thus, we affirm the judgment of the circuit court granting summary judgment in favor of McBeth and Rankin Medical.

¶43.    **AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**