ROBERTS, J.,
for the Court:
¶ 1. Bobby Batiste murdered his roommate, Andreas Galanis, in the apartment that they shared at 21 Apartments in Starkville, Mississippi. Andreas’s mother, Katerina Galanis, and his sister, Christina Galanis, (the Galanises) sued Batiste[1] and the companies[2] that owned and managed 21 Apartments. According to the Galanis-es, 21 Apartments negligently failed to warn Andreas of Batiste’s violent tendencies. 21 Apartments moved for summary judgment and argued that there was no evidence that it had actual or constructive knowledge of Batiste’s propensity for violence, so it had no duty to warn Andreas. The Oktibbeha County Circuit Court agreed. The Galanises appeal. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. 21 Apartments began leasing apartments during August 2006. Located near the campus of Mississippi State University, 21 Apartments was marketed toward college students. Batiste was one of 21 Apartments’ original tenants.
¶ 3. During 2007, 21 Apartments hired Ambling Management Company LLC to manage the apartments. Ambling instituted a policy of performing background checks through an outside service on all people who applied for new leases and existing tenants who sought to renew their leases. If the applicant was ineligible to lease an apartment due to his prior criminal history, the applicant received a letter informing him of the negative results. 21 Apartments did not receive a comprehensive list of the applicant’s criminal record.
¶ 4. When Batiste sought to renew his lease during 2007, his background check indicated that he had a prior criminal history. Consequently, 21 Apartments told Batiste ’ that” his renewal application had been denied. A few months later, attorney James A. Williams faxed a letter to 21 Apartments and explained that Batiste was “not a convicted felon.” Williams further explained that Batiste had been charged with crédit-card fraud. According to Williams, although Batiste had pled guilty, Batiste’s case had been “non-adjudicated, which means that he submitted to probation, but [he] was not convicted.” Williams attached a copy of Batiste’s non-adjudication order.[3] Because 21 Apartments’ policy prohibited leasing to anyone who had been convicted - of a crime, and Batiste had not been adjudicatéd guilty of credit-card fraud, 21 Apartments allowed him to renew his lease.
¶ 5. Months later, Andreas applied to lease an apartment. He was instantly approved. To help, tenants find roommates, 21 Apartments provided a questionnaire *88 regarding each tenant’s study habits, social lifestyle, and other factors. Although 21 Apartments notified tenants of potential roommates and introduced them, it was up to the individual tenants to select a roommate. In other words, 21 Apartments did not force any particular tenants to share an apartment. 21 Apartments introduced Andreas and Batiste because they were both football fans, and they were both older than traditional college students. After Andreas and Batiste met, they chose to become roommates.[4]
¶ 6. Leasing consultant Lorenzo Butler thought that Andreas and Batiste were close friends. During his deposition, Butler said that Andreas and Batiste “were together all [of] the time.” Andreas and Batiste both told Butler.that they liked living together. According to bookkeeper[5] Debbie Owen, Andreas and Batiste “were best friends.” Owen added that “wherever you saw [Andreas or Batiste], you saw the other.”
¶ 7. However, on March 6, 2008, Andre-as told Owen that his debit card had been used without his permission, and he suspected that Batiste was responsible. Owen advised Andreas to file a report with the Oktibbeha County Sheriffs Department. Andreas followed Owen’s advice and spoke with Deputy Steven Woodruff. Deputy Woodruff asked Andreas if he wanted to file charges against Batiste, but Andreas declined. Andreas told Deputy Woodruff that he wanted to try to resolve the issue with Batiste.
¶ 8. Sometime after Andreas returned to his apartment, Batiste killed him. Batiste was later convicted of capital murder and sentenced to death. Batiste v. State, 121 So.3d 808, 823 (¶ 1) (Miss.2013). On direct appeal, the Mississippi Supreme Court affirmed Batiste’s, conviction and sentence. Id.
¶ 9. In March 2009, the Galanises sued 21 Apartments and Batiste. According to the Galanises, 21 Apartments “knew or ... should have known that [it] failed to provide ... reasonably] safe premises for Andreas_” The Galanises also claimed that 21 Apartments was liable for Andre-as’s death because it had failed to warn him of Batiste’s criminal history or his violent tendencies “before assigning him to share living space with .. Batiste.”
¶ 10. More than three years later, 21 Apartments filed a motion for summary judgment. Among other things, 21 Apartments argued that summary judgment was appropriate because it did not have actual or constructive knowledge that Batiste was a violent person, so it had no duty to warn Andreas of Batiste’s violent personality. The circuit court agreed and granted 21 Apartments’ motion for summary judgment;[6] The Galanises appeal.
STANDARD OF REVIEW
¶ 11. An appellate court conducts a de novo review of a trial court's decision to grant a motion for summary *89 judgment. Kilhullen v. Kansas City S. Ry., 8 So.3d 168, 174 (¶ 14) (Miss.2009). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions oh file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We must review the evidence in the light most favorable to the nonmoving party. Kilhullen, 8 So.3d at 174 (¶ 14).
¶ 12. To overcome a motion for summary judgment, the’ 'nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing there is a genuine issue for trial.” M.R.C.P. 56(e). The Mississippi Supreme Court has recently held:
[I]n a summaryHjudgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non[ ]moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.
Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88-89 (¶ 11) (Miss.2013) (quotations omitted).
ANALYSIS
I. DUTY TO WARN
¶ 13. The Galanises claim that the. circuit court erred when it held that 21 Apartments did not have a duty to warn Andreas that Batiste was a violent person. According to the Galanises, the circuit court should have found that 21 Apartments had actual or constructive knowledge of. Batiste’s violent personality. Therefore, -the • Galanises reason that 21-Apartments had a duty to warn Andreas of Batiste’s personality.,,
¶ 14. This is clearly a premises-liability case. “Premises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner[’s] premises as a result of ‘conditions or activities’ on the land.” Double Quick Inc. v. Moore, 73 So.3d 1162, 1165 (¶ 8) (Miss.2011) (quoting Doe v. Jameson Inn, Inc., 56 So.3d 549, 553 (¶ 11) (Miss.2011)). To successfully demonstrate negligence, a plaintiff must prove that (1) the defendant had a duty “to conform to a specific standard of conduct for the protection of others against the unreasonable risk of inju ry”; (2) the defendant breached that duty; (3) there is a causal relationship between the breach and the alleged injury; and (4) the plaintiff suffered “injury or damages.” Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1143 (¶ 30) (Miss.2004). The primary issue in this case is whether 21 Apartments had a duty to warn Andreas that Batiste was a violent person. We are mindful that “the existence ... of a duty of care is a question of law.” Id. We review questions of law de novo. Pascagoula Sch. Dist. v. Tucker, 91 So.3d 598, 603 (¶ 8) (Miss.2012).
*90 ¶ 15. It is undisputed that An-dreas was an invitee.[7] “[A] property owner is not the insurer of an invitee’s safety. Instead, a ‘premises owner must employ reasonable care to protect an invitee from’ ‘reasonably foreseeable injuries at the hands of another.’ ” Holmes v. Campbell Props. Inc., 47 So.3d 721, 725 (¶ 14) (Miss.Ct.App.2010) (quoting Newell v. S. Jitney Jungle Co., 830 So.2d 621, 623 (¶ 6) (Miss.2002)). “An assault on the premises is reasonably foreseeable[8] if the defendant had either: (1) actual or constructive knowledge of the assailant’s violent nature, or (2) actual or constructive knowledge an atmosphere of violence existed on the premises.” Id. “[T]he important component of the existence of the duty is that the injury is ‘reasonably foreseeable,’ and thus it is appropriate for the trial judge to decide.” Rein, 865 So.2d at 1143 (¶ 29) (quoting Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991)).
¶ 16. The Galanises do not argue that there was an atmosphere of violence at 21 Apartments. Instead, they argue that 21 Apartments had actual or constructive knowledge that Batiste was a violent person. According to the Galanises, 21 Apartments should have realized that Batiste was a violent person based on a “resident-concern form” that Batiste submitted regarding one of his previous roommates.
¶ 17. Before Batiste and Andreas were roommates, Batiste’s roommates were Arthur Hosey and Demarcus Cousins. Approximately one year before Batiste killed Andreas, Batiste submitted a resident-concern. form regarding Hosey’s poor housekeeping. Within the resident-concern form, Batiste stated:
Since October ... 2006, [Hosey] has been messing up the living area and not cleaning it up. Our kitchen is so messy that we have flies now. A[ ]lot of them [are] dead on the floor. To resolve this earlier, I took it upon myself to clean the whole living area twice. That failed because it [became] dirty [again]. I have also tried talking to him about keeping it clean. It goes in one ear and out [of] the other. There have been times when [other people] have come down. They can be a witness to it. Even [property manager] Nandra [Jackson] has seen the mess. I can’t take it anymore. I don’t want to get violent. He’s had to[o] many chances. I wish he would leave now[,] because I can’t stay in an environment where every[ ]time I turn around[,] I have a fly in my room. I keep my things clean and my room organized. He doesn’t even take out the trash. I- hope this get[s] resolved soon because I really don’t want to take matters into my own hands.
According to the Galanises, Batiste’s statements that he did not “want to get violent” and he did not “want to take matters into [his] own hands” put 21 Apartments on notice that Batiste was a violent person. Additionally, the Galanises note that Owen, the bookkeeper and assistant manager at 21 Apartments, swore in an affidavit that she had no reason to believe that Batiste was a violent person before he killed An-dreas. The Galanises further note that *91 during Owen’s deposition, she was confronted with Batiste’s resident-concern form. After repetitive questioning by one of the Galanises’ lawyers, Owen relented and testified that she would not have signed her affidavit if she would have been aware of Batiste’s resident-concern form. The Galanises reason that there was a genuine issue of material fact regarding whether 21 Apartments had a duty to warn Andreas that Batiste was a violent person.
¶ 18. However, even in the context of summary judgment, the existence of a duty is a question of law. Rein, 865 So.2d at 1143 (¶ 30) (affirming in part a trial judge’s decision to grant a motion for summary judgment based on the absence of a duty). It follows that the existence of a duty is not a question of fact. “[TJhere-fore, the ruling by the trial court was a judgment call as a matter of law, but certainly not impermissible.” Id. at 1144 (¶ 31).
¶ 19. Essentially, the Galanises argue that 21 Apartments should have known that Batiste was a violent person because he said he did not want to “take matters into his own hands” or use violence to resolve a dispute. However, there is no evidence that 21 Apartments had any reason to think that Batiste had been violent with his former roommate.
¶ 20. Additionally, it is unreasonable to view Batiste’s resident-concern form in a vacuum as though 21 Apartments only had it as a means to determine whether Batiste was a violent person. The Galanises deposed three people who had worked at 21 Apartments at the time that Batiste lived there. According to Owen, Batiste frequently visited the office multiple times each week. Within her affidavit, Owen described Batiste as “very nice and helpful.” She added that “he was extremely outgoing, friendly!,] and kind,” and he “appeared ... to be a very peaceful person.” Jackson described Batiste in similar terms.
¶ 21. Butler, the former leasing consultant for 21 Apartments, said that he “would have considered [Batiste to be] a friend.... ” Butler also said that “everyone liked” Batiste. Butler used the following terms to describe Batiste: personable, funny, nice, mannerable, friendly, pleasant, and very respectable. Butler stated that it was “hard not to like someone like that.”
¶22. Butler also personally observed Batiste when Batiste operated the gate to the apartments during a few weekends when Mississippi State University had home football games. According to Butler, Batiste did “a fantastic job.” Butler explained that Batiste had to turn away some people who did not live at 21 Apartments. Butler added that some of the people who Batiste turned away became angry and cursed at Batiste. Even so, Batiste remained calm and “never got tem-permental.”
¶23. Furthermore, it was undisputed that Andreas and Batiste appeared to get along well with each other. According to Butler, they both had said that they enjoyed living together. There was testimony that they were frequently seen together. In her affidavit, Owen said that Andreas and Batiste appeared to be “best buddies.” The employees of 21 Apartments had no reason to believe that Batiste would attack Andreas.
¶24. As far as the employees of 21 Apartments knew, Batiste had never been violent with anyone. Instead, Batiste maintained the appearance of a personable, outgoing, friendly, and engaging person. It is unreasonable to hold 21 Apartments to a precognitive duty to warn Andreas that Batiste was a violent person based solely on Batiste’s expressed desire to avoid violence. “The *92 actor is not bound to a precision of anticipation [that] would include an unusual and improbable or extraordinary occurrence, although such happening is within the range of possibilities.” Rein, 865 So.2d at 1144 (¶ 32). “[T]he principles of common law must be kept within practical bounds and so as not to occupy an attitude which would place it over and above the heads of those who must carry on the everyday affairs of life.” Id. As a matter of law, we find that Batiste’s resident-concern form did not provide ‘21 Apartments with actual or constructive knowledge that Batiste was a violent person. It follows that 21 Apartments did not have a duty to warn Amdréas that Batiste was a violent person. Having found such, it is unnecessary to determine whether there are genuine issues of material fact regarding the remaining elements of a prima facie case of negligence. Accordingly, there is no merit to this issue.
II. BACKGROUND CHECK
¶25. The Galanises also argue that 21 Apartments had a duty to deny Batiste’s application for a lease based on his prior criminal history for credit-card theft.[9] The Galanises reason -that if 21 Apartments had followed its policy, Batiste would have never lived with Andreas. They further reason that Batiste would not have stolen from Andreas, Andreas would not have confronted Batiste, and Batiste would not have killed Andreas.
¶ 26. As discussed previously, Batiste’s former attorney contacted 21 Apartments and explained that Batiste had pled guilty to credit-card fraud, but he had not been adjudicated guilty. Batiste’s former attorney also -sent 21 Apartments a non-adjudication order. A subsequent background check showed that Batiste had not been convicted of any offense.
¶27. It was 21 Apartments’ policy to decline an application if the prospective tenant had been convicted of a felony. Although Batiste had pled guilty to credit-card' fraud, he had not been adjudicated guilty. Technically, Batiste had not been convicted of a felony, and 21 Apartments did 'not act contrary to its own policy. Furthermore, it was not foreseeable that because Batiste had pled guilty but not been adjudicated guilty of credit-card fraud, he would kill one of his roommates. There is no merit to this issue.
III. HEIGHTENED DUTY OF CARE
¶ 28. Finally, the Galanises argue that because 21 Apartments performed background checks on prospective tenants and helped tenants find potential roommates, 21 Apartments owed Andreas a “heightened” duty of care. To support their argument, the Galanises rely entirely on Doe ex rel. Doe v. Wright Security Services, 950 So.2d 1076 (Miss.Ct.App.2007). In Doe, this Court reversed a circuit court’s decision to grant summary judgment in favor of a security service after a student was sexually assaulted by *93 another student while neither student was on school property. Id. at 1086 (¶ 43). We held that summary judgment was inappropriate because the security service had contracted with the victim’s school district to provide security services; thus, the security service had accepted the duty to protect the victimized student. Id. at 1080 (¶ 15). We further noted that Doe was not a premises-liability case. Id. at 1081 (¶ 18).
¶29. 21 Apartments’ policies of performing limited background checks and assisting tenants in finding roommates do not rise to a contractual “heightened” duty of care. 21 Apartments did not guarantee that a tenant would not be harmed by a roommate. Tenants were informed that they were responsible for their own safety. 21 Apartments did not promise to do anything for Andreas beyond what it provided. Furthermore, 21 Apartments merely introduced Andreas and Batiste. 21 Apartments did not force Andreas to live with Batiste. Andreas and Batiste both chose to share an apartment. We find.no merit to the Galanises’ argument that 21 Apartments owed Andreas a “heightened” duty of care.
¶ 30. THE JUDGMENT OF THE OK-TIBBEHA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., ISHEE, CARLTON AND FAIR, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY MAXWELL AND JAMES, JJ.; ISHEE, J., JOINS IN PART. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.; JAMES, J., JOINS IN PART. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.

. Batiste filed a pro se answer. He denied that he was liable for Andreas’s death.

. At the time Batiste killed Andreas, 21 Apartments was owned by Alta MSU LLC and managed by Ambling Management Company. For the sake of brevity, we refer to the Appel-lees collectively as 21 Apartments in this opinion unless stated otherwise.

. Batiste was not convicted of credit-card fraud. Instead, the circuit court deferred the acceptance of his guilty plea, and placed him on non-adjudicated probation for four years and ordered him to pay restitution. Presumably, if Batiste had satisfactorily completed his non-adjudicated probationary term, the charge would have been dismissed and expunged from his record as set forth in Mississippi Code Annotated section 99-15-26 (Supp.2014).

. Andreas and Batiste were both twenty-seven years old when they became roommates. They were also both students at Mississippi State University. An international student named Jaewoo Joo also shared an apartment with Andreas and Batiste, but he had returned to South Korea before Batiste went to trial for capital murder.

. Owen began working for 21 Apartments during July 2006. Sometime between then and March 2008, Owen had been promoted to assistant manager. Even so, Owen said that her , employment responsibilities did not change much.

. The circuit .court later entered a corrected order finding that it was a final judgment as set forth in Rule 54(b) of the Mississippi Rules of Civil Procedure. Although he is presently sentenced to death, Batiste remains a viable defendant to the Galanises’ lawsuit.

. “An invitee is a person who enters the premises of another in response to an express or implied invitation of the owner or occupant for their mutual advantage.” Moore, 73 So.3d at 1166 (¶ 12).

. It is necessary to distinguish foreseeability in the context of the existence of a duty, and foreseeability in the context of causation. “While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty.” Rein, 865 So.2d at 1143 (¶ 30).

. Judge Griffis’s dissent notes the Galanises’ claim that 21 Apartments also had constructive notice of Batiste’s violent nature because an investigative report from Lauderdale County indicated that Batiste had been arrested for simple assault during June 2002. However, Butler stated that the background check "only told [him] that the person did not pass the background check....” In other words, the background check did not produce a comprehensive criminal history. There is no evidence that 21 Apartments had notice that Batiste had been charged with simple assault during June 2002. And there is no evidence that Batiste had been convicted of that charge. In fact, the record indicates that the simple-assault charge had been dismissed.