ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice, for the Court:
¶ 1. In this premises-liability case, we must determine whether the trial judge erred in holding, as a matter of law, that the owners and management of an apartment complex where Bobby Batiste murdered his roommate, Andreas Galanis, could not be held liable for failing to warn Galanis about Batiste’s violent tendencies. According to the trial judge, a resident concern form describing Batiste’s violent intent toward a former roommate “alone is insufficient to create a genuine issue of material fact” as to whether the complex management knew of Batiste’s violent nature. When viewed in the light most favorable to the plaintiffs, this was sufficient to create a genuine issue of material fact. Therefore, we hold that the trial court eired in granting summary judgment to the apartment complex, and we reverse and remand for a trial.
FACTS AND PROCEDURAL HISTORY
¶ 2. Sometime after Batiste rented an apartment from 21 Apartments, he filed a resident concern form in which he complained about his first roommate, Arthur Hosey:
Since October of 2006, Arthur has been messing up the living area and not cleaning it up. Our kitchen is so messy that we have flies now[.] A[ ]lot of them [are] dead on the floor. To resolve this earlier, I took it upon myself to clean the whole living area twice. That failed because it got right back dirty. I have also tried talking to him about keeping it clean. It goes in one ear and out the other. There have been times when *1215 Lane or Brent has come down. They can be a witness to it. Even Mrs. Nan-dra [Jackson, the property manager,] has seen the mess. I can’t take it anymore. I don’t want to get violent. He’s had to[o] many chances. I wish he would leave now because I can’t stay in an environment where every[]time I turn around I have a fly in my room. I keep my things clean and my room organized. He doesn’t even take out the trash. I hope this get[s] resolved soon because I really don’t want to take matters in[to] my own hands.[1]
¶ 3. In February 2007, 21 Apartments denied Batiste’s application for a lease renewal, after a newly required pass/fail background check indicated Batiste had a criminal history, making him ineligible to renew his lease under the new policy. But after Batiste’s attorney explained that Batiste had failed the background check because of an ongoing, nonadjudicated probation for felony credit-card fraud, and that a nonadjudication was not the same as a conviction, 21 Apartments allowed Batiste to renew his lease without conducting any additional background check.
¶ 4. On August 20, 2007, Galanis applied to rent an apartment at 21 Apartments. He filled out an application, as well as a roommate matching form and a consent form for a background check. After meeting with Galanis, 21 Apartments employees decided Galanis and Batiste (who was without a roommate) might be a good match, based on their age and love of football. Without disclosing Batiste’s threatening statements against his former roommate,[2] 21 Apartments invited the two to the clubhouse to meet one another, after which Galanis and Batiste decided to become roommates.
¶ 5. On March 6, 2008, Galanis discovered thousands of dollars missing from his bank account. Suspecting his roommate, Galanis went to the apartment office to notify managers of his problem. He then went to both the bank and local police department to 'investigate further. The next day, his body was found in his apartment inside a wheelbarrow, wrapped in a rug. Batiste was later convicted for Ga-lanis’s murder.[3] In March 2009, Galanis’s family sued 21 Apartments for failure to provide a reasonably safe premises; failure to warn Galanis about Batiste’s violent tendencies; and failure to perform adequate background checks.
¶ 6. 21 Apartments filed a motion for summary judgment, arguing that it had no duty to protect Galanis from Batiste because it did not have actual or constructive knowledge about Batiste’s violent tendencies. The Galanises responded that 21 Apartments had actual knowledge of Batiste’s violent tendencies and that it had assumed a heightened duty to perform an adequate background check. The circuit court agreed with 21 Apartments and found that the apartment complex owed no duty and granted the motion for summary judgment. The Galanises appealed to the Court of Appeals, which affirmed the circuit court’s decision.[4]
¶ 7. We then granted the Galanises’ petition for writ of certiorari and now hold that the circuit judge erred by granting *1216 summary judgment. So we reverse the judgments of the circuit court and the Court of Appeals, and we remand this case for further proceedings.
ANALYSIS
¶ 8. In the circuit court and on appeal, the Galanises have presented two theories as to why 21 Apartments owed and breached, a duty of care to Galanis. First, they argue that 21 Apartments owed a duty of reasonable care under premises-liability law. And second, they argue that, even if it owed no duty under premises-liability law, 21 Apartments assumed a duty of heightened- care to conduct adequate background checks.
¶ 9. Summary judgment is appropriate if the evidence in the record shows “that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”[5] In deciding the motion, the trial court must view all the evidence in the light most favorable to the nonmoving party.[6] We review questions of law presented in a motion for summary judgment de novo.[7]
I. Whether 21 Apartments owed a duty of reasonable care under premises-liability law.
1110. To prevail in their premises-liability action, the Galanises must show (a) that 21 Apartments owed a duty to Galanis;' (b) that 21 Apartments breached that duty; (c) damages; and (d) a causal connection between the breach of that duty and the damages, such that the breach is the proximate cause of the Ga-lanises’ injuries.[8]
¶ 11. Whether a duty exists is a question of law.[9] To determine the duty owed in' a premises-liability case, courts begin by classifying the status of the plaintiff.[10] Mississippi law classifies a land entrant as either an invitee, a licensee, or a trespasser.[11] Here, the parties agree that Galanis was an invitee.
¶ 12. A premises owner’s duty to an invitee can include an obligation to protect an invitee from reasonably foreseeable injuries caused by third parties.[12]
“Although not an insurer of an invitee’s safety, a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another.” Generally, “criminal acts can be intervening causes which break the causal connection with the defendant’s negligent act, if the criminal act is not within the realm of reasonable foreseeability.” In premises liability cases, foreseeability may be *1217 established by proving that the defendant had "(1) actual or constructive knowledge of the assailant’s violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises.”[13]
¶13. Here again, the Galanises have conceded that no atmosphere of violence existed at the time of Galanis’s murder. .Rather, they contend sufficient facts exist to show that 21 Apartments had actual knowledge about Batiste’s violent nature. We agree.
- ¶ 14. The resident concern form provided sufficient evidence for a jury to find that 21 Apartments had actual knowledge of Batiste’s dangerous nature. The parties do not dispute that 21 Apartments possessed Batiste’s complaint letter before Galanis’s murder. But they dispute the meaning of several key phrases, particularly Batiste’s statements that “I don’t want to get violent,” and “I hope this get[s] resolved soon because I really don’t want to take matters into my own hands.”
¶ 15. While there may be disagreement as to the interpretation of thege words, we find that — for the purposes of summary judgment, where we must draw all reasonable inferences in favor of the nonmov-ant — Batiste’s letter provided 21 Apartments actual knowledge that Batiste had violent propensities. And with actual knowledge, when 21 Apartments suggested that Batiste and Galanis meet to consider being roommates, it had a duty to warn Galanis about Batiste’s threats against his former roommate. So we find the circuit judge erred by holding as a matter of law that 21 Apartments owed Galanis no duty under premises-liability law, and by granting summary judgment to 21 Apartments.
II. Whether 21 Apartments assumed a heightened duty of care.
¶ 16. Relying on the Mississippi Court of Appeals’ opinion, in Doe ex rel. Doe v. Wright Security Services, Inc.,[14] the Galantees also argue that 21 Apartments undertook a heightened duty to perform background checks and to screen tenants properly as part of its agreement with Galanis. They argue that this “self-imposed duty to invitees” .is greater than the normal common-law duties owed to invitees. We disagree.
¶ 17. In Doe, a male student at Capitol City Alternative School in Jackson was sexually assaulted by another student after being allowed to leave the bus stop unescorted to use the, bathroom.[15] At that ■time, the Jackson Public School District contracted with Wright Security Services to provide security at the bus stop.[16] The student sued Wright, arguing that it had assumed a duty to protect the children at the bus stop through its contract with the school district.[17] The Mississippi Court of Appeals agreed.[18]
¶ 18. We find Doe clearly distinguishable from today’s case. In Doe, the court stated that “indeed, this is not a premises liability case.... Instead, the duties of care result from [the defendant’s] contract with [the school district] to, provide security services.”[19] But this case is a premises-liability case. That distinction is impor *1218 tant. Doe stands for the proposition that one may assume a duty of reasonable care where one previously did not exist.[20] Here, 21 Apartments already owed its tenants a duty to maintain the premises in a reasonably safe condition. Said differently, the contract in Doe created Wright’s duty of reasonable care to the plaintiff, whereas 21 Apartments already owed a duty of reasonable care to Galanis.
¶ 19. We might agree that Doe could apply if 21 Apartments had contracted with someone to provide security, and the Galanises had tried to sue that party. But that is not the case here. 21 Apartments did not contract with anyone to protect its tenants, and no one contracted with 21 Apartments to protect its tenants.
¶ 20. The separate opinion authored by Justice Kitchens would conclude that by choosing to perform background checks and provide a roommate matching service, 21 Apartments assumed the duty of “reasonable care” under some law other than premises-liability law. But 21 Apartments — as premises owner — already owed Galanis — as an invitee — a duty of reasonable care.- Certainly, the Galanises may argue to the jury that 21 Apartments breached its duty to warn of known dangers by failing to reveal the results of Batiste’s background check when it matched Batiste and Galanis as potential roommates. But that is an issue of breach, not duty.
¶ 21. The separate opinion goes on to say that “[a] jury could find that Batiste’s stealing Galanis’s debit card was within the realm of foreseeable harm that was within the risk being taken by 21 Apartments allowing someone with a criminal history to live in its apartment complex.” But again, this claim falls squarely within the realm of premises liability.
¶ 22. So a jury certainly could find that 21 Apartments breached its duty of reasonable care, but we agree with both the circuit court and the Court of Appeals that 21 Apartments assumed no heightened duty, and the Galanises’ claim may proceed only under premises-liability law.
CONCLUSION
¶ 23. Because the plaintiffs produced sufficient evidence at the summary-judgment stage to show that 21 Apartments possessed actual knowledge of Batiste’s violent tendencies, we reverse the Oktibbeha County Circuit Court’s grant of summary judgment and the Court of Appeals’ judgment affirming that grant, and we remand this case for further proceedings consistent with this opinion.
¶ 24. REVERSED AND REMANDED.
WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND KING, J.

. Emphasis added.

. "I can't take it anymore. I don’t want to get violent. He’s had to[o] many chances.... I hope this get[s] resolved soon because I really don’t want to take matters in[to] my own hands.”

. See Batiste v. State, 121 So.3d 808, 873 (Miss.2013) (affirming Batiste’s capital-murder conviction and death sentence).

. Galanis v. CMA Mgmt. Co., 176 So.3d 85, 87-88, 2014 WL 5556196, at *1 (Miss.Ct.App.2014).

. Miss. R. Civ. P. 56(c).

. Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983).

. Olier v. Bailey, 164 So.3d 982, 986 (Miss.2015) (citing Double Quick, Inc. v. Moore, 73 So.3d 1162, 1165 (Miss.2011)).

. Grisham v. John Q. Long V. F.W. Post, No. 4057, Inc., 519 So.2d 413 (Miss.1988) (citing Burnham v. Tabb, 508 So.2d 1072 (Miss.1987)); Lyle v. Mladinich, 584 So.2d 397, 398-99 (Miss.1991) (citing May v. V.F.W. Post #2539, 577 So.2d 372 (1991)).

. Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1144 (Miss.2004) (quoting Donald v. Amoco Prod. Co., 735 So.2d 161, 174 (Miss.1999)).

. Leffler v. Sharp, 891 So.2d 152, 156 (Miss.2004) (citing Massey v. Tingle, 867 So.2d 235, 239 (Miss.2004)).

. Leffler, 891 So.2d at 156 (citing Massey, 867 So.2d at 239).

. Lyle, 584 So.2d at 399, (‘‘[S]uch a duty has been expanded and modified to encompass negligent or wrongful attacks on the invitee by other patrons,”).

. Double Quick, Inc. v. Lymas, 50 So,3d 292, 298 (Miss.2010) (internal citations omitted).

. Doe ex. rel. Doe v. Wright Sec. Servs., Inc., 950 So.2d 1076 (Miss.Ct.App.2007).

. Id. at 1078.

. Id.

. Id.

. Id', at 1082-85.

. Id. at 1081.

. Id. at 1080.