# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00341-COA

**AINSLIE BABIN**                                                                 **APPELLANT**

**v.**

**WENDELTA, INC. D/B/A WENDY'S #242**                               **APPELLEE**

DATE OF JUDGMENT:          03/18/2022
TRIAL JUDGE:               HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT,
                           FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:    LAUREN ELIZABETH CAVALIER
ATTORNEY FOR APPELLEE:     KRISTI ROGERS BROWN
NATURE OF THE CASE:        CIVIL - PERSONAL INJURY
DISPOSITION:               REVERSED AND REMANDED - 07/25/2023
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Ainslie Babin filed suit against Wendelta Inc. d/b/a Wendy's #242 ("Wendy's") in the Circuit Court of Harrison County for injuries she sustained from a fall at the restaurant. After discovery, Wendy's filed a motion for summary judgment, which the circuit court granted. Babin appeals and argues, among other things, that there were material facts in dispute that precluded a grant of summary judgment. After reviewing the record and arguments of the parties, we reverse the circuit court's judgment and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2.     On May 14, 2019, Babin, a disabled and retired teacher's assistant and librarian, and

her family headed home to Louisiana from a family vacation in Pensacola, Florida. Babin and her husband, Brad, traveled with their adult son, Reece, and his wife, Cassie, in one vehicle. Babin and Brad's daughter, Macy, her husband, and their one-year-old traveled in a separate car. The group stopped for lunch at Wendy's on Highway 49 in Gulfport, Mississippi.

¶3.     The store had two entrances that each opened to small vestibules. From there, patrons entered the restaurant through another door. Wendy's placed rubber mats in each vestibule in front of the door closest to the outside exit. Inside the lobby itself, Wendy's placed a larger mat. The vestibules were not ventilated and had ceramic tile flooring.

¶4.     Babin, who wore leg braces for a congenital neurological condition, entered one of the outer vestibules and stepped on the mat. As she did, the mat slipped from under her, causing her to fall back, and her right foot hit the door used for entering the restaurant. Cassie and Reece, who were behind Babin, witnessed the mat slip and Babin fall. Brad, who on their arrival had gone to Macy's car to see if Macy's husband needed help with the baby, came to assist his wife. Brad said that he kept slipping on the mat as well, so he threw it outside to get his wife up. Reece confirmed this, though photographs taken of Babin after she was lifted to a chair show a mat in the area. Brad described the mat that he picked up as "wore out" on the bottom "where if you step on it, it would slide." Babin said that when her husband picked the mat up, she saw the back, and it was smooth. Reece described the mat as having "crinkles" and that it did not lie flat.

¶5.     After Babin was transported to a local hospital, Reece and Cassie remained at

2

Wendy's with other family members. Cassie said that she saw the manager and someone else put the mat back where it was. She observed the two employees step on the mat to see if it moved, and it did. Reece saw the same thing, saying that the black female manager he had spoken with and "a bald white man in a blue button down [shirt]" were messing with the rug:

> And when they put it back, they were running their foot over it, seeing how it slid, and then they put it back vertical with the door. And when we left, I ran my foot over it and it still moved.

Cassie, Brad, and Babin said the floor in the vestibule was not wet.

¶6.     As a result of the fall, Babin suffered a right ankle fracture and underwent surgery to insert hardware to piece the broken bones back together.

¶7.     On October 11, 2019, Babin filed a complaint in the Circuit Court of Harrison County against Wendy's, claiming that Wendy's was negligent and breached its duty to the public to exercise reasonable care in maintaining its premises in a reasonably safe condition for customers entering the restaurant. On November 8, 2019, Wendy's filed an answer to Babin's complaint, denying any liability.

¶8.     During discovery, depositions of Babin's family members and Wendy's employees were taken, and documents were produced.

¶9.     Wendy's district manager Riche Karl testified that he would occasionally visit various Wendy's locations to work alongside the general managers, and he was at the restaurant on the day that Babin fell. Karl admitted that one of the main purposes of the mats on the floor was

> so their [patrons'] first step into the restaurant is not on tile. If they're coming in from outside and they've got wet feet, their first step into the restaurant you

3

don't want it to be on tile.

He agreed that moisture could get on the floor from condensation inside the vestibule. He said that managers were not required to purchase any particular type of mat for the entryways to the store and that nothing is placed underneath the mats. Karl said that a week before the incident, he instructed the store manager, Monique Reed, to purchase some new mats. On the day of the incident, Karl testified that around 9:00 a.m., he placed the mat inside the vestibule. He said the mat did not move or slide around at that time. But he also said that when he moved the mat closer to the threshold, he "just slid it over." He never personally spoke to Babin, nor did he ever personally examine the mat after the accident.

¶10. Reed, who had worked for Wendy's for seventeen years and was the general manager of the store that day, testified that she was responsible for replacing the mats and buying new mats. She said that Wendy's has no official policies or procedures concerning the mats, except that employees were to make sure that the floor is dry and to place a wet floor sign down if needed. Employees also watched a safety video during orientation. Concerning the purchase of new mats, Reed testified that no standard mat was required, and she had bought the mats either from a catalog provided by Wendy's or from the local Lowe's store when they needed the mat quickly. Reed said she bought the mat Babin slipped on at Lowe's a week before.

¶11. On the day of the incident, Reed said she did a "walk through" inspection before the store opened, and she did not notice the mat slipping or moving. According to the incident report, the floors had been wet-mopped the night before. The day of the incident (a Tuesday)

4

was what Reed called a "truck day" when trucks made deliveries and only simple maintenance, like sweeping the parking lots and wiping windows, was performed. Reed also testified that nothing was placed underneath the rugs to keep them from slipping. Neither she nor Karl witnessed Babin's fall because both of them were in different parts of the restaurant at the time. When Reece was called, Babin was already on her feet, leaning in the doorway of the vestibule. Reed instructed another employee, Rodney Weston, to take Babin a chair. Reed testified that the mat Babin slipped on was placed in a bag and put in a storage area.

¶12. Weston testified that at the time he was employed as a grill cook and did general maintenance in the restaurant, which included mopping floors and clearing trash from the parking lot. At the time of Babin's fall, Weston was at the front counter working the cash register. He testified that Babin fell in the area between the first threshold and the second door. He said that she stepped on the mat and that the mat "just slipped from under her and she fell." Weston testified that he usually dry-mopped the dining area when he opened the store because it would have dew from the overnight air conditioning. He further stated:

> But in that doorway because there's no, like, ventilation in it, it's like it's going to hold the moisture in it, so the rug is real slippery I guess.

Weston testified that after Babin's fall, the mats were replaced. He also testified that he usually put "wet floor" signs inside the doorways because

> [t]here's no like ventilation inside those -- inside that little doorway. So I keep that there just in case -- because only air comes in when people open the door and close. So it's not the air -- the dew is not soaking it up. So I leave those in there. The wet floor signs.

5

Photographs taken at the time of Babin's fall show no "wet floor" signs in the area.

¶13.    Wendy's employee Cherri Trotter, who worked the drive-through on the day of Babin's fall, testified that she moved to the edge of the counter so she could see what was happening. Babin had already fallen, and people were lifting her into a chair. Trotter said that the mat was not worn, but she also said that "those rugs slid a little bit anyway but when they were placed longways they didn't slide as much." Trotter also said Karl was not at work that day, but they called him after Babin fell.

¶14.    Babin retained a safety expert named Dennis Howard, who examined the subject mat that Wendy's had preserved. As a board-certified safety professional, Howard had experience in recognizing, evaluating, and controlling hazards to provide a reasonably safe walking surface for pedestrians. Howard was also experienced in studying and analyzing causation and contributions to causes of slips, trips, and falls. On December 17, 2021, Howard inspected the mat as well as the vestibule where it had been placed. In his affidavit, Howard described the mat as a two-foot by three-foot utility mat manufactured by Mohawk Home as part of their Walk-off Collection. The receipt for the purchase Wendy's provided confirmed that mats with these dimensions were purchased from Lowe's for $12.98 each. Two other larger mats were also purchased that day. Howard stated that the mat he inspected was irregularly buckled and had a four-inch rip on its outer edge. He added that the bottom of the mat had very few slip-resistant properties. Howard also observed that the surface of the vestibule was covered with ceramic tiles. Because of the mat's properties, Howard stated in his affidavit/report:

6

[I]t is my expert opinion that the mat in question does not conform with American National Standard B101.6 (ANSI/NFSI B101.6 Standard) Standard Guide for Commercial Entrance Matting in Reducing Slips, Trips, and Falls. The mat in question was not designed to be used in a high traffic commercial setting and presented an unreasonably dangerous condition. . . .

Even though Wendy's knew that the mat had a tendency to migrate, Wendy's failed to comply with industry safety standards such as ANSI/NSFI B101.6 Standard Section 8.8 which provides, "when mats migrate a considerable distance, they shall be secured in place or another mat shall be selected that reduces or eliminates migration. Areas where mat migration may take place shall be monitored and the hazard corrected."

[Further] the quality and condition of the mat on this [vestibule] tile surface, particularly when damp, was such that it should have been replaced with a mat designed for commercial purpose prior to Mrs. Babin stepping on it. Wendy's failure to replace said mat constitutes a dangerous condition.

Wendy's did not contest Howard's credentials as an expert witness, nor did Wendy's retain any expert to rebut Howard's opinions. Moreover, Wendy's never moved to strike Howard's opinions as being irrelevant or unreliable.

¶15. On November 29, 2021, Wendy's filed a motion for summary judgment and argued there was no genuine issue of material fact in dispute and that Babin could not establish that the mat was a dangerous condition, an element necessary to sustain her claim. To support its motion, Wendy's submitted a Lowe's receipt dated May 8, 2019, showing that two mats of different sizes and types were purchased a week before the incident. Wendy's also submitted a description of a mat on Lowe's website to argue that the mat was commercially reasonable. The mat described on Lowe's website was a "Mohawk Home Utility Bay Black Door Mat" that measured three feet by four feet. It sold for $19.98 and was noted to be either a residential or commercial mat. However, the receipt also included the purchase of

7

two smaller two-foot by three-foot mats at $12.98 each. The mat that was preserved after Babin's fall that was provided to Babin's expert for inspection measured two feet by three feet. No website information for this size mat was produced. Moreover, neither the receipt nor Lowe's website information was authenticated by any Wendy's witness during depositions or by affidavit.

¶16. In response to Wendy's motion for summary judgment, Babin submitted deposition testimony from Babin's family and Wendy's employees, as well as the affidavit and report from safety expert Howard.

¶17. On February 17, 2022, the circuit court heard arguments on Wendy's motion for summary judgment during which the court asked to be provided the ANSI standards (the American National Standards Institute Inc.). The parties complied and submitted the "American National Standard, B101.6 Standard Guide for Commercial Entrance Matting in Reducing Slips, Trips and Falls," which had been approved by ANSI on June 5, 2012.

¶18. On March 9, 2022, the circuit court granted Wendy's motion and entered a written opinion. The circuit court found that Babin could not "prove that any negligence of Wendy's created a dangerous condition that caused the Plaintiff's injury." Furthermore, the circuit court found there was no "dangerous condition that existed for a sufficient amount of time so that the Defendant should have known of the existence of the dangerous condition." Referencing Howard's affidavit, the circuit court reviewed the "ANSI/NFSI Standard Guide" for "Commercial Entrance Matting in Reducing Slips, Trips, and Falls" and found it was "unpersuasive as such standards are completely voluntary and do not preclude anyone from

8

buying items outside the standard." The court found that the standards did not create a question of fact and entered a final judgment in favor of Wendy's on March 18, 2022.

¶19. On April 6, 2022, Babin filed her notice of appeal. Babin presents the following issues: (1) whether Wendy's failure to use commercially reasonable mats created an unreasonably dangerous condition; (2) whether the mat in the vestibule was unreasonably dangerous was a question for the jury; (3) whether there is a dispute of material fact about whether Wendy's knew or should have known of the unreasonably dangerous condition; (4) whether there is a dispute of fact concerning Wendy's failure to train employees; (5) whether there is a dispute of fact concerning Wendy's failure to warn Babin of the dangerous condition; (6) whether the circuit court erred in accepting the unauthenticated Lowe's receipt and website information; and (7) whether the circuit court erred in weighing testimony and making credibility decisions.

## STANDARD OF REVIEW

¶20. Appellate courts apply a de novo standard of review when considering a trial court's ruling on summary judgment. *Satchfield v. R.R. Morrison & Son Inc.*, 872 So. 2d 661, 663 (¶5) (Miss. 2004). "The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). The evidence must be viewed in the light most favorable to the party against whom the motion has been made, and the non-movant will "be given the benefit of every reasonable doubt." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 72 (¶12)

9

(Miss. 2019) (emphasis omitted) (quoting *Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017)). When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial on the merits. *Id.*

## DISCUSSION

¶21. "Premises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of 'conditions or activities' on the land." *Fairley Constr. Servs. Inc. v. Savage*, 265 So. 3d 203, 208 (¶10) (Miss. Ct. App. 2019) (quoting *Doe v. Jameson Inn Inc.*, 56 So. 3d 549, 553 (¶11) (Miss. 2011)). The extent of the duty owed depends on the status of the injured party, i.e., whether he or she is an invitee, licensee, or trespasser. *Id.* at (¶11). In this case, it is undisputed that Babin was a business invitee when the incident occurred on Wendy's premises. As such, the "operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988).

¶22. "[A] property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (¶10) (Miss. Ct. App. 2010). Merely showing that a party on the property fell and was injured is not sufficient to establish liability. *Green v. Supermarket Ops. Inc.*, 330 So. 3d 434, 438 (¶12) (Miss. Ct. App. 2021). Therefore, in order to recover, Babin must prove (1) that some

10

negligent act of Wendy's caused her injury; or (2) that Wendy's had actual knowledge of a dangerous condition and failed to warn the public; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to Wendy's, such that Wendy's should have known of the dangerous condition. *Anderson v. B. H. Acq. Inc.*, 771 So. 2d 914, 918 (¶8) (Miss. 2000). "[R]egardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2016).

¶23. Additionally, if a plaintiff proves circumstances from which the jury might reasonably conclude that the dangerous condition was one that was traceable to the proprietor's own act or omission, no proof of notice is necessary. *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 156 So. 2d 734, 736 (1963). "When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown." *Id.*[1]

¶24. There is no specific definition of a "dangerous condition." A condition may be considered "dangerous" in even the simplest of circumstances. For example, in *Keckley v. Estes Equipment Co.*, 276 So. 3d 1230, 1233-34 (¶6) (Miss. Ct. App. 2018), a customer at a convenience store was injured when she tripped over partially detached caution tape surrounding a construction site on the premises. In considering Keckley's appeal of the

---

[1] In addition to the defense of notice, the business operator has no duty to warn an invitee of dangers that are "open and obvious." *Mayfield v. The Hairbender*, 903 So. 2d 733, 738 (¶21) (Miss. 2005). But the fact "that a condition is 'open and obvious' is not a defense to an operator's alleged negligence in allowing the hazard to remain on the premises." *Id.* at 739 (¶27). Nor does it "eliminate the [operator's] duty to maintain the premises in a reasonably safe condition." *Id.*

circuit court's grant of summary judgment to Estes Equipment, this Court quoted *Cox v. Wal-Mart Stores East LP*, 755 F.3d 231, 235 (5th Cir. 2014), where a patron tripped on a threshold of a sliding door that "rocked" slightly. *Keckley*, 276 So. 3d at 1237-38 (¶22). We noted that "although the defect alleged in Cox's complaint is a minor defect, the hidden and surprising nature of the defect could remove it from the 'normally encountered dangers' patrons expect to encounter when crossing a threshold." *Id*. The *Cox* court emphasized that at the summary judgment stage, it was required to accept the sworn testimony presented by Cox, which combined with the fact that the defective condition appeared suddenly and without warning was "sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition." *Id*. Applying *Cox* to the facts alleged by Keckley, we held:

> According to Keckley's testimony, the caution tape in this case is similar to the defective threshold in *Cox*. Keckley testified that the tape suddenly, unexpectedly, and without warning rose up slightly and caused her to trip and fall. The tape appeared to have been discarded and was lying flat on the ground. However, according to Keckley, the tape was actually secured on either side of the sidewalk, creating a "tripwire" during a sudden gust of wind. The caution tape itself was not "hidden." But neither was the door threshold in *Cox*. According to Keckley's testimony, the tripwire-like effect of the caution tape was "hidden and surprising"—just like the unexpected "rocking" of the door threshold in *Cox*. *Id*. *Like the Fifth Circuit in Cox, we emphasize that on a motion for summary judgment, we must accept the plaintiff's sworn testimony as true. Id*. And we hold that "[t]he fact that the alleged defective condition changed suddenly and without warning . . . is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition." *Id*.

*Keckley*, 276 So. 3d at 1238 (¶23) (emphasis added).

¶25. Witness testimony can establish sufficient disputed facts on the question of a

dangerous condition that precludes summary judgment. In *Renner*, 236 So. 3d at 811 (¶2), the plaintiff tripped over the protruding lower leg of a stack of highchairs that the restaurant had placed near the condiments counter. Siegel, an eyewitness to the fall, said that the highchairs were obscured from view behind a half-wall, but the legs protruded out farther. *Id*. at 812 (¶6). She said that she had seen other customers bump into the highchairs at the same location and that she had complained to the manager and other McDonald's employees about the hazard. *Id.* at (¶7). In reversing the circuit court's grant of summary judgment to the restaurant, the Mississippi Supreme Court stated:

> The trial court's opinion fails to account for the testimony of Siegel and concluded that, because highchairs normally are present in restaurants, an invitee could expect to encounter them. The trial judge's opinion erroneously supplanted the facts in the record with his own opinion regarding the location of the highchairs. This is a role for jurors. See *Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 309 (Miss. 1999) ("The trial court's function on a Rule 56 motion for summary judgment is not to resolve disputed factual issues, but rather to determine whether issues of fact exist to be tried.").

*Renner*, 236 So. 3d at 815 (¶19).

¶26. In the case at hand, the circuit court held that "Babin had failed to create a question of fact regarding the existence of a dangerous condition," finding that "the mat [Babin slipped on] was not a dangerous condition and Wendy's had no knowledge of any condition that may have caused it to be dangerous." But the record contains ample proof that contradicts the circuit court's finding and creates questions of fact for the jury to decide.

### A. The Mat

¶27. Although Wendy's argued that the mat in question was a new, commercially reasonable mat purchased a week before the incident, the evidence indicated the opposite.

13

Karl, the regional manager, admitted that Wendy's had no policy or directive about the type of mat that should be used in high-traffic areas like the entryways. The store manager, Reed, only noted that managers could purchase mats from a catalog Wendy's provided or purchase mats themselves from Lowe's if they needed them quickly. But neither Karl nor Reed testified under oath what type of mat was used in the entryways or provided any information as to why such a mat was commercially reasonable. Wendy's attached to its summary judgment motion a Lowe's receipt dated May 8, 2019, and Lowe's website description of a 3'x4' Mohawk Home Utility Bay Black Door Mat, which sold for $19.98. But the mat that was preserved and inspected by Babin's expert did not match the description of the allegedly commercially reasonable 3'x4' mat on the Lowe's website. Instead, the mat in question, which was also purchased the week before, measured two feet by three feet and cost $12.98. According to the undisputed expert testimony, "the mat in question was not designed to be used in a high traffic commercial setting and presented an unreasonably dangerous condition." Thus, the circuit court's finding that the mat in question was commercially reasonable is not supported by the evidence in the record and is a fact clearly in genuine dispute.[2]

---

[2] We agree with Babin that the website information that Wendy's attached to its motion without authenticating deposition testimony or affidavit constitutes hearsay and was not admissible at trial and should not have been considered by the court. *See Mar-Jac Poultry MS LLC v. Love*, 283 So. 3d 34, 43 (¶22) (Miss. 2019) ("[S]ummary-judgment evidence must be admissible at trial. Hearsay statements that would not be admissible at trial are incompetent to support or oppose summary judgment." (citation omitted)). However, the receipt dated May 8, 2019, correlates with Reed's testimony that the mat in question had been purchased a week before Babin's May 14, 2019 fall. This receipt also establishes that mats other than 3'x4' mats (that allegedly were commercially reasonable mats) had been purchased as well, which supports Babin's case.

*B. The Mat's Sliding*

¶28. Whether the mat was slippery on that day, creating a dangerous condition, is also in dispute. Wendy's argued that Karl testified he had placed the mat in position that morning, and it did not slip.[3] In addition, Manager Reed testified that she performed a premises inspection before opening the restaurant on May 14, 2019, and the mat was not slippery. But Babin presented testimony to dispute this evidence. Not only did Babin herself testify the mat slipped,[4] Babin's husband, Brad, testified that the mat was slippery when he tried to help Babin up. Babin's daughter, Macy, testified that she saw both Brad and Babin slip on the mat. Both Macy and her husband also testified that after Babin had left for the hospital, they observed Karl and Reed in the vestibule testing the mat and confirming that the mat had slid.

¶29. Significantly, two of Wendy's employees testified that the mats in the vestibule slid. Trotter admitted that the "rugs" slid and that employees placed them longways so "they didn't slide as much." Weston said that because the vestibules held condensation and the floors became moist, the "rugs" became slippery.

---

[3] Karl's presence at the restaurant at the time of Babin's fall is also in dispute since Wendy's employee Trotter testified that he was not there and that he had only been called later.

[4] The circuit court relied on Babin's testimony that the floor was not wet to preclude her recovery. However, there was testimony in the record that the floor did not have to be "wet" (as on a rainy day) but that it could also be moist from condensation and cause the mat to slip. Wendy's employee Weston said that the vestibule where Babin fell had no ventilation and held moisture, creating a condition where the mats would slide. Weston noted that because the condensation in the vestibule builds up and causes the floors to be moist, he usually placed wet-floor signs as cautionary measures, but photographs showed no wet floor signs out at the time Babin fell. Thus, Babin's single statement that the floor was not "wet," without further explanation of her meaning of the word, should not be considered in isolation and used to defeat her claim.

15

*C.      Expert Testimony*

¶30.    In addition, Babin presented unopposed expert testimony that Wendy's had created a dangerous condition with its choice of mats to place in its vestibules.  Howard, who examined the subject mat that Wendy's preserved, found that it was *not* the 3'x4' alleged commercially reasonable mat described in Lowe's website materials.  Rather it was a 2'x3' mat made for home use that he found was irregularly buckled, had a four-inch rip on its outer edge, and the bottom had very few slip-resistant properties.  Wendy's presented no evidence to contradict these physical findings, nor did Wendy's present any expert testimony to rebut Howard's findings and opinions.

¶31.    The circuit court erroneously concluded that Howard's expert opinion was not supported by the ANSI standards because the standards are voluntary.  However, even if these standards are voluntary and their violation does not establish negligence per se, the ANSI standards are relevant to the issue of whether a party used reasonable care.  We have held this when considering the relevancy of Occupational Safety and Health Administration (OSHA) regulations, specifically stating:

> OSHA regulations are not admissible to show negligence on the part of the defendant.  However, Mississippi Rule of Evidence 105 provides that evidence not admissible for one purpose may be admissible for another purpose provided a proper limiting instruction is given. . . . [T]he Mississippi Supreme Court [has] held that OSHA regulations were not admissible to show negligence but could be used as a measure of reasonable care consistent with industry standards.

*Fairley Constr. Servs.*, 265 So. 3d at 212 (¶35) (citations and internal quotation marks omitted).  In this case, the Forward to the ANSI Standards indicates that they were developed

16

by a subcommittee of the National Floor Safety Institute (NFSI) B101 Main Standards Committee. The Forward further notes:

> As a standards-developing organization, NFSI sought and was accredited by the Executive Council of ANSI on June 6, 2006, to develop standards to address the prevention of slips, trips and falls.

Under "Section 8. Reduction of Hazards Related to Matting," the standard created for mat movement provides:

> 8.8 **Mat Movement Across Floor**
>
> When mats migrate a considerable distance, they shall be secured in place or another mat shall be selected that reduces or eliminates migration.
>
> Areas where migration may take place shall be monitored and the hazard corrected.

This published standard, although it may not establish negligence per se, is certainly relevant to the facts in this case and supports fall-prevention expert Howard's opinions.

¶32. Moreover, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration.'" *BNJ Leasing Inc. v. Portabull Fuel Serv. LLC*, 591 F. Supp. 3d 125, 138 (S.D. Miss. 2022).

¶33. This conflicting testimony creates questions of fact for a jury to resolve. *Hines v. Moore*, 124 Miss. 500, 87 So. 1, 2-3 (1921); *Darby v. State*, 121 Miss. 869, 84 So. 6, 7 (1920). "Conflicting testimony in the record is to be resolved by the trier of fact." *Settlemires v. Jones*, 736 So. 2d 471, 475 (¶17) (Miss. Ct. App. 1999). Accordingly, with the witness testimony in conflict, a jury as the trier of fact should resolve the issue of whether

17

the mat Wendy's used created a dangerous condition.

¶34. The Mississippi Supreme Court stated in *Kilhullen v. Kansas City S. Ry.*, 8 So. 3d 168, 174 (¶14) (Miss. 2009):

> [S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried . . . . [I]t cannot be used to deprive a litigant of a full trial of genuine fact issues.

(Quoting Miss. R. Civ. P. 56 cmt). The Supreme Court has held that to establish a genuine issue of material fact, a party must support his claim with "evidence upon which a fair-minded jury could return a favorable verdict." *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (¶35) (Miss. 2023) (quoting *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 74 (¶12) (Miss. 2017)). In this case, Babin presented such evidence disputing a genuine issue of material fact, namely, the existence of a dangerous condition at the time of her fall. Accordingly, we hold that the circuit court erred in finding otherwise.

## CONCLUSION

¶35. After reviewing the facts de novo and in the light most favorable to the nonmoving party, we hold that from the record presented, there are genuine issues of material fact in dispute as to whether the mat used by Wendy's created a dangerous condition. Accordingly, we reverse the circuit court's grant of summary judgment for Wendy's and remand for further proceedings.

¶36. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN**

**OPINION.**